(936 P.2d 294)
No. 76,288

LARRY WATKINS, JR., *Claimant*, v. FOOD BARN STORES, INC., and CREDIT GENERAL INSURANCE COMPANY, *Appellants*, and KANSAS WORKERS COMPENSATION FUND, *Appellee*.

—

Opinion filed April 18, 1997.

*Robert D. Benham*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellants.

*Jeff K. Cooper*, of Topeka, and *John C. Nodgaard*, of Arn, Mullins, Unruh, Kuhn & Wilson, LLP, of Wichita, for appellee.

Before BRAZIL, C.J., LEWIS, J., and JOHN ANDERSON III, District Judge, assigned.

BRAZIL, C.J.: Food Barn Stores, Inc., and Credit General Insurance Company (collectively referred to as Food Barn) appeal the decision of the Workers Compensation Board (Board) modifying Larry Watkins' workers compensation award. The Board reversed the decision of the administrative law judge (ALJ) and found that Watkins suffered from a work disability after he lost his job when Food Barn was sold. Food Barn challenges the sufficiency of the evidence supporting this decision. Watkins did not file a brief. We reverse.

The parties are familiar with the facts, and they will not be repeated except as necessary in our consideration of the issues.

This court's review of workers compensation orders is limited to questions of law. K.S.A. 44-556(a). Whether the Board's findings of fact are supported by substantial competent evidence is a question of law. *Guerrero v. Dold Foods, Inc.*, 22 Kan. App. 2d 53, 55,

913 P.2d 612 (1995); see K.S.A. 77-621(c)(7); *Tovar v. IBP, Inc.,* 15 Kan. App. 2d 782, 784, 817 P.2d 212, *rev. denied* 249 Kan. 778 (1991).

Kansas law provides a presumption of no work disability. K.S.A. 1992 Supp. 44-510e(a) states in part:

"The extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the ability of the employee to perform work in the open labor market and to earn comparable wages has been reduced, taking into consideration the employee's education, training, experience and capacity for rehabilitation, except that in any event the extent of permanent partial general disability shall not be less than percentage of functional impairment. . . . There shall be a presumption that the employee has no work disability if the employee engages in any work for wages comparable to the average gross weekly wage that the employee was earning at the time of the injury."

Because Watkins returned to Food Barn and performed the same work for the same wage as before his injury, the presumption of no work disability applies. The Board found that the presumption was overcome, however, after Watkins lost his job at Food Barn. The Board cited *Lee v. Boeing Co.,* 21 Kan. App. 2d 365, 372, 899 P.2d 516 (1995), which held that the presumption of no work disability may be applied as to one period of time and overcome as to another.

In *Lee,* after the claimant injured his back, he returned to work at an accommodated light duty job. Over a year later, Lee was laid off for economic reasons. The Board held that the presumption of no work disability was not overcome as to the time period between the injury and the layoff, but was overcome after the layoff, even though Lee's physical condition had not changed. The *Lee* court held: "It is not the intent of the legislature to deprive an employee of work disability benefits after a high-paying employer discharges him or her as part of an economic layoff where the employer was accommodating the injured employee at a higher wage than the employee could earn elsewhere." 21 Kan. App. 2d at 372. The crucial distinction between *Lee* and the present case is that, unlike Lee, Watkins was not working in an accommodated position.

Placing an injured worker in an accommodated job artificially avoids work disability by allowing the employee to retain the ability

to perform work for a comparable wage. See K.S.A. 1992 Supp. 44-510e(a). In this way, an accommodated job can be beneficial to both the employee and the employer. See *Griffin v. Dodge City Cooperative Exchange*, 23 Kan. App. 2d 139, 147-48, 927 P.2d 958 (1996). Once an accommodated position ends, however, the injured worker may be exposed to the open labor market, and a work disability may be revealed. Accordingly, once an accommodated job ends, the presumption of no work disability may be rebutted. Otherwise, an employer could accommodate an injured employee for a period of time, thus invoking the presumption of no work disability, and then discharge the employee and use the presumption to avoid paying the worker disability benefits. See *Lee v. Boeing*, 21 Kan. App. 2d at 372.

The same logic does not hold true where an injured worker returns to work in an unaccommodated position. If following an injury an employee is physically able to return to work, perform his or her job duties without special accommodation, and earn a wage comparable to his or her pre-injury wage, then by definition that employee does not have a work disability. See K.S.A. 1992 Supp. 44-510e(a). If the employee subsequently loses the job for economic or other reasons, the loss of employment cannot by itself create a work disability, absent a change in the employee's physical condition. In other words, the loss of a job does not change an employee's physical ability to perform work in the open labor market and earn a comparable wage. It is the employee's ability to perform work at a comparable wage which determines work disability, not whether the employee is utilizing that ability. See *Brown v. City of Wichita*, 17 Kan. App. 2d 72, 77, 832 P.2d 365, *rev. denied* 251 Kan. 937 (1992). Where an employee returns to work in an unaccommodated job and earns wages comparable to those earned before his or her injury, the presumption of no work disability applies and will not be rebutted absent evidence of a change in the employee's physical condition.

In the present case, Watkins performed the same job for the same wage following his injury. Food Barn did not place Watkins in an accommodated position. Watkins' ability to perform his job

indicates he did not suffer from a work disability. See K.S.A. 1992 Supp. 44-510e(a).

Further, it is uncontroverted that Watkins' physical condition has not changed since his injury. It follows that physically, Watkins' ability to perform work in the open labor market and earn comparable wages has not changed. The only change comes in the form of Watkins' decreased earnings since his layoff from Food Barn. However, work disability focuses on the reduction in a claimant's *ability* to earn wages, not on the actual wages lost. *Brown v. City of Wichita*, 17 Kan. App. 2d at 77. Here, Watkins' abilities have remained constant.

The medical evidence relied upon by the Board was generated before and during Watkins' post-injury employment at Food Barn. At that time, Watkins did not have a work disability. Absent a change in Watkins' physical condition, this same medical evidence cannot subsequently support a finding of a work disability. " 'Substantial evidence' is evidence which possesses both relevance and substance, and which furnishes a substantial basis of fact from which the issues can be reasonably resolved." *Kansas Racing Management, Inc. v. Kansas Racing Comm'n*, 244 Kan. 343, 365, 770 P.2d 423 (1989). Here, given the fact that Watkins was physically able to return to his job and earn a comparable wage, the medical evidence does not furnish a substantial basis of fact from which the Board could reasonably conclude that Watkins had a work disability. *Cf. Perez v. IBP, Inc.*, 16 Kan. App. 2d 277, 279, 826 P.2d 520 (1991) (affirming Board's finding of no work disability where employee successfully returned to work following injury but was subsequently discharged for poor attendance). In this instance, substantial competent evidence does not exist to support the Board's finding that Watkins has a 27% work disability.

The medical evidence does show that Watkins sustained permanent injury. Watkins is entitled to workers compensation benefits based on his functional bodily impairment. K.S.A. 1992 Supp. 44-510e(a) mandates that "the extent of permanent partial general disability shall not be less than percentage of functional impairment." See *Griffin v. Dodge City Cooperative Exchange*, 23 Kan. App. 2d at 147-48 (stating that an employee who has no work dis-

ability is generally limited to benefits based upon his or her functional disability). In this case, the parties agreed that Watkins sustained an 8% permanent partial functional bodily impairment, and the ALJ awarded compensation on that basis. This award is proper, and the Board erred in modifying it to include an additional work disability.

Reversed.