(957 P.2d 1120)
No. 77,803

PAMELA COOPER, *Claimant/Appellee*, v. MID-AMERICA DAIRYMEN, *Respondent/Appellant*, and HOME INSURANCE COMPANY, *Insurance Carrier/Appellant*, and KANSAS WORKERS COMPENSATION FUND.

Opinion filed May 1, 1998.

*John David Jurcyk* and *Douglas M. Greenwald*, of McAnany, Van Cleave & Phillips, P.A., of Lenexa, for appellants.

*Patrick R. Nichols*, of Topeka, for appellee.

Before LEWIS, P.J., RULON, J., and WAHL, S.J.

LEWIS, J.: The Workers Compensation Board (Board) awarded claimant permanent partial disability benefits based on a finding of "work disability" of 85%. The Board then determined that claim-

ant had a 100% wage loss. Respondent and its insurance carrier appeal.

In early 1993, claimant was employed by respondent Mid-America Dairymen to bag dry powdered milk. This work consisted of bagging 50-pound bags of dry powder and lifting, weighing, and twisting the bags. After she had been on the job for only a few days, claimant developed soreness and swelling in her fingers as well as aching in her elbow and shoulder.

Claimant then sought medical attention for her pain and disability. She was diagnosed with bilateral carpal tunnel syndrome. She had surgery on each arm, one in November 1993 and the other in January 1994. The fact that the injury suffered by claimant was job related is not contradicted.

Respondent apparently attempted to accommodate claimant and reassigned her to jobs that it believed were compatible with her restrictions. Despite her pain and discomfort, claimant continued to work for respondent until she was laid off in 1994.

The key to this case is whether claimant was entitled to a 100% loss of wages as a result of her disabilities as was found by the Board. Respondent argues that claimant is capable of earning wages but has no interest in doing so as long as workers compensation checks continue to flow into her hands.

The Board found claimant to have sustained an 85% work disability. It did so by averaging a 70% loss of task function by Dr. Zimmerman with a wage loss figure of 100%.

The record shows that from the time claimant was laid off in 1994 to the date of the hearing, she had worked for only 2 weeks at a local grocery store. She testified briefly that she had looked for other work but was unable to find it.

The issues to be decided on this appeal are the claimant's "capacity" to earn wages and "good faith" in seeking another job.

The Board set the date of the accident on claimant's last day at work. We agree. The Board applied our decisions in *Condon v. Boeing Co.*, 21 Kan. App. 2d 580, 903 P.2d 775 (1995), and *Berry v. Boeing Military Airplanes*, 20 Kan. App. 220, Syl. ¶ 3, 885 P.2d 1261 (1994), in reaching its decision as to the date of the accident. We agree with the Board's decision and its rationale.

The only seriously disputed issue on this appeal is the extent of claimant's wage loss. The Board determined "[t]he difference between what claimant was earning [at the time of the injury] and what claimant is earning is, therefore, 100 percent." The math employed by the Board was arrived at by merely observing that claimant is now unemployed and is earning no wages. A person earning no wages at this time has a 100% wage loss from the wages he or she was earning while employed. If the end period were to stop at this point, claimant's loss would be 100%.

Respondent argues that the Board should have taken into consideration claimant's "capacity to work." This suggestion is strongly opposed by claimant, who does not want her capacity to work to be considered by the court.

K.S.A. 44-510e(a) states:

"The extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the employee, in the opinion of the physician, has lost the ability to perform the work tasks that the employee performed in any substantial gainful employment during the fifteen-year period preceding the accident, averaged together with the difference between the average weekly wage the worker was earning at the time of the injury and the average weekly wage the worker is earning after the injury."

Claimant seeks a literal reading of the statute. According to claimant, her capacity to earn wages was irrelevant, and the only question that needs to be determined is to compare what she made on the job with what she is making now.

If we were to accept claimant's position, anyone could acquire a 100% wage loss by simply quitting one job and never taking another. We cannot believe that the legislature intended for this result to take place.

Despite our belief, the Board took an opposite approach when it stated:

"The Appeals Board recognizes that the evidence in this case includes evidence that claimant has the ability to earn wages. The ability to earn wages is, however, no longer the test for injuries after July 1, 1993. We do not believe the *Foulk* decision intended to reintroduce claimant's ability as a factor in determining work disability except for the limited circumstances where the claimant has refused to accept employment the claimant can perform."

We hold that the decision of the Board on this issue was error.

In *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 284, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995), we dealt with a similar question. In that case, claimant argued that her ability to obtain work for a comparable wage was irrelevant. We held that it was not and said:

"Construing K.S.A. 1988 Supp. 44-510e(a) to allow a worker to avoid the presumption of no work disability by virtue of the worker's refusal to engage in work at a comparable wage would be unreasonable where the proffered job is within the worker's ability and the worker has refused to even attempt the job. The legislature clearly intended for a worker not to receive compensation where the worker was still capable of earning nearly the same wage. Further, it would be unreasonable for this court to conclude that the legislature intended to encourage workers to merely sit at home, refuse to work, and take advantage of the workers compensation system. To construe K.S.A. 1988 Supp. 44-510e(a) as claimant suggests would be to reward workers for their refusal to accept a position within their capabilities at a comparable wage."

We cannot imagine a workers compensation system in which a worker could receive 100% wage loss compensation where that same worker is still capable of earning nearly the same wage.

Based on the decision in *Foulk*, we hold that the Board erred in excluding the issue of claimant's ability to earn wages.

We recently expanded the *Foulk* decision in *Copeland v. Johnson Group, Inc.*, 24 Kan. App. 2d 306, 320, 944 P.2d 179 (1997), when we said:

"In attempting to harmonize the language of K.S.A. 44-510e(a) with the principles of *Foulk*, we find the factfinder must first make a finding of whether a claimant has made a good faith effort to find appropriate employment. If such a finding is made, the difference in pre- and post-injury wages based on the actual wages can be made. This may lead to a finding of lesser wages, perhaps even zero wages, notwithstanding expert opinion to the contrary.

"If a finding is made that a good faith effort has not been made, the factfinder will have to determine an appropriate post-injury wage based on all the evidence before it, including expert testimony concerning the capacity to earn wages."

There is ample evidence in the record that claimant has the ability to earn wages. She made some efforts to find a job but failed to do so. As a result, at the present time she is operating a craft shop, which does not pay her enough money for her to take any

wages. Whether her efforts at finding employment rise to the level of "good faith" is an issue not determined by the trier of fact. This requires that we reverse and remand for further inquiry.

In line with *Foulk* and *Copeland*, we hold that where a claimant has the ability to earn wages but is not doing so, an inquiry must be made into the good faith of the claimant in seeking employment. An effort that amounts to nothing more than a sham or token effort will not suffice. The effect of such a finding on claimant's award is discussed in *Copeland*.

We recognize that the Board made a finding from which we could infer that claimant made a good faith effort to find a job. This finding takes on less importance when it is realized that the Board decided the claimant's ability to work was irrelevant. On remand, the ability of claimant to earn wages will indeed be relevant, and the finding should be made in that context.

We hold as follows: (1) The determination of the Board as to the loss of wages by claimant is reversed; (2) wage earning capacity or ability to earn wages is a factor in determining work disability under K.S.A. 44-510e(a); and (3) in determining the extent of claimant's wage loss, the Board must conduct a hearing on and determine whether claimant made a good faith effort to find work. If the Board were to decide that no good faith effort has been made, then the Board will have to determine an appropriate post-injury wage based upon all the evidence before it as is set forth in *Copeland*.

Reversed and remanded.