(962 P.2d 1100)
No. 77,546■

JENNIFER S. LOWMASTER, *Appellee*, v. MODINE MANUFACTURING Co., *Appellant,* and SENTRY CLAIMS SERVICE, *Insurance Carrier.*

Opinion filed June 12, 1998. ■

*Kirby A. Vernon* and *Christopher J. McCurdy,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Wichita, for appellant.

*Timothy J. King,* of Speth, King & Riedmiller, of Wichita, for appellee.

Before LEWIS, P.J., ELLIOTT, J., and WAHL, S.J.

ELLIOTT, J.: Modine Manufacturing Company (Modine) appeals the order of the Workers Compensation Board (Board) awarding

Jennifer Lowmaster an 80% permanent partial general disability and awarding her damages in the amount of $100,000.

We reverse and remand.

Lowmaster was employed as a press operator by Modine from May 1990 to May 1994. She began to experience pain in her shoulders some time in early 1991. She sought treatment for a brief period in 1991 and again in 1992. She sought no additional treatment from January 1992 until May 1994.

Lowmaster eventually developed pain in both of her wrists. On May 9, 1994, she sought treatment from a company-referred physician, who provided her with wrist splints. She worked with the wrist splints for 2 days and then quit her job.

Lowmaster filed a workers compensation claim on May 25, 1994. By order of the court, she was evaluated by Dr. Tyrone Artz. Dr. Artz found that Lowmaster had sustained a 6% permanent partial functional impairment to her body. Lowmaster was later evaluated by Dr. Ernest Schlachter at the request of her attorney. Dr. Schlachter found that she had a 9% permanent partial functional impairment to her body. He also found that she had a 75% job task loss. Lowmaster was also evaluated by Karen Crist Terrill, a vocational rehabilitation counselor, who found that she had sustained a 33% job task loss.

Special administrative law judge Douglas F. Martin awarded Lowmaster compensation based on an 8% functional impairment to the body as a whole, but awarded nothing for work or task loss disability. Lowmaster appealed to the Board.

The Board found that Lowmaster was eligible for work disability because she was not employed at 90% of her pre-loss wage at the time her claim was filed. The Board stated that it could not say that Lowmaster *would* have refused accommodated employment and found that she had an 80% permanent partial general disability. The Board awarded Lowmaster monetary damages in excess of $100,000.

Modine first argues that the Board erred in finding that Lowmaster was entitled to an 80% permanent general disability rating. Interpretation of a statute is a question of law. This court's review of questions of law is unlimited. *Foulk v. Colonial Terrace*, 20 Kan.

App. 2d 277, 283, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995). When interpreting a statute, this court should give effect to the intent of the legislature to the extent that intent can be ascertained. *State v. Le,* 260 Kan. 845, Syl. ¶ 4, 926 P.2d 638 (1996). "The legislature is presumed to intend that a statute be given a reasonable construction, so as to avoid unreasonable or absurd results." 260 Kan. 845, Syl. ¶ 4.

K.S.A. 44-510e(a) governs the award of permanent partial general disability benefits. The pertinent section of the statute provides that an employee is not entitled to receive permanent partial general disability compensation in excess of the percentage of functional impairment as long as the employee is engaging in any work for wages equal to 90% of the employee's pre-injury average weekly wage.

This court has previously interpreted K.S.A. 44-510e(a). In *Foulk v. Colonial Terrace,* an employee refused an employer's offer of accommodated employment and then claimed that she was entitled to work disability. 20 Kan. App. 2d at 280. The employee argued that the presumption of no work disability does not apply if a worker has the *ability* to engage in such work but *chooses* not to do so. 20 Kan. App. 2d at 283.

This court found that to construe K.S.A. 44-510e(a) in this manner would be unreasonable where the proffered job is within the worker's ability and the worker has refused to even attempt the job. 20 Kan. App. 2d at 284. Further, this court found that the legislature clearly did not intend for a worker to receive compensation where the worker is capable of earning nearly the same wage as his or her pre-injury wage. 20 Kan. App. 2d at 284. More importantly, this court stated that "it would be unreasonable . . . to conclude that the legislature intended to encourage workers to merely sit at home, refuse to work, and take advantage of the workers compensation system." 20 Kan. App. 2d at 284.

This court recently clarified this ruling. In *Copeland v. Johnson Group, Inc.,* 24 Kan. App. 2d 306, 308, 944 P.2d 179 (1997), an employee failed to return to work after having been given work restrictions. The employee filed a workers compensation claim. The administrative law judge found that she had a 10% functional

impairment but no disability rating because she had been offered, but refused, accommodated employment. On appeal, the Board found that the employee had an 80% work disability rating based on 100% wage loss. The employer argued that the employee was capable of earning wages at the time of her injury and was, therefore, ineligible for a work disability rating. 24 Kan. App. 2d at 319.

This court held that in order to "harmonize the language of K.S.A. 44-510e(a) with the principles of *Foulk*, . . . the factfinder must first make a finding of whether a claimant has made a good faith effort to find appropriate employment. If such a finding is made, the difference in pre- and post-injury wages based on actual wages can be made." If such a finding is not made, "the factfinder will have to determine an appropriate post-injury wage based on all the evidence before it, including expert testimony concerning the capacity to earn wages." *Copeland*, 24 Kan. App. 2d at 320.

The Board found the facts in the present case to be "materially different" from the facts of *Foulk*. The Board admitted that the evidence indicated that Modine could and would have offered Lowmaster accommodated work, but that because no such offer was *actually made*, it could not say that she refused such work. From this, the Board reasoned that the *Foulk* decision did not allow it to treat Lowmaster as if she were engaging in work at 90% or more of her pre-injury wage.

While it is true that the facts of the present case are distinguishable from the facts of *Foulk*, they are not *materially* different. In *Foulk*, the employee refused to do the accommodated work which she was capable of doing. In the present case, testimony indicates that Lowmaster was capable of doing her job up until the day that she quit. In *Foulk*, the evidence showed that the employee was capable of earning 90% of her pre-loss wage, although she chose not to do so. In the present case, testimony indicates that Modine would have accommodated Lowmaster's work restriction had she not quit her job. It follows, therefore, that she was *capable* of earning 90% of her pre-loss wage, but *chose* not to do so. In both cases, an employee was capable of performing her job, was offered or would have been offered accommodated employment, and re-

fused—either by refusing to do the work or by quitting the job—to do the accommodated work.

The Board also was correct in stating that Modine never *actually* offered Lowmaster accommodated employment. It is equally true, however, that Lowmaster never *requested* such an offer. At oral argument, Lowmaster asserted that she had requested accommodated employment three times before she quit working at Modine. A careful review of the record on appeal reveals no such request. Lowmaster had the burden to designate a record sufficient to support this argument. Absent such a record, her argument fails. See *Cline v. Tittel*, 20 Kan. App. 2d 695, 702-03, 891 P.2d 1137, *rev. denied* 257 Kan. 1091 (1995).

What the Board failed to take into account is that Lowmaster, like the employee in *Foulk*, was capable of earning 90% of her preloss wage but *chose* not to do so. The Board also failed to consider the policy effects of its decision. The decision would create a rule requiring employers to offer accommodated employment to an employee even when that employee has voluntarily terminated his or her employment with the employer. The employer also would be required to offer accommodated employment to someone who was no longer an employee, arguably even one who had quit years earlier, all in an effort to avoid excessive workers compensation awards.

Whether framed in terms of the "good faith" test articulated in *Copeland*, or the policy considerations outlined in *Foulk*, the result is the same. An employee who is capable of accommodated work must, at a minimum, attempt to do such work. A mere refusal to do the work is insufficient to allow the employee to circumvent the provisions of K.S.A. 44-510e(a). Lowmaster has failed in this burden.

Reversed and remanded for further proceedings consistent with this court's opinions in *Foulk* and *Copeland*.