(977 P.2d 288)

No. 80,253

TYRONE L. OLIVER, *Appellee*, v. THE BOEING COMPANY-WICHITA, and AMERICAN MANUFACTURERS MUTUAL INSURANCE CO., *Appellants,* and WORKERS COMPENSATION FUND, *Appellee*.

Opinion filed April 2, 1999.

*Eric K. Kuhn* and *Stephen M. Kerwick*, of Foulston & Siefkin, L.L.P., of Wichita, for the appellants.

*Stephen J. Jones*, of Law Office of Stephen J. Jones, of Wichita, for the appellee Tyrone L. Oliver.

Before PIERRON, P.J., PADDOCK, S.J., and MATTHEW J. DOWD, District Judge, assigned.

PIERRON, J.: Tyrone Oliver received a workers compensation award including payment for wage loss. The Boeing Company-Wichita and American Manufacturers Mutual Insurance Company (Boeing) contend that Oliver did not allow Boeing the opportunity to offer accommodated work before he resigned and claimed disability and, therefore, he did not act in good faith. We affirm.

Oliver worked for Boeing installing doors on 737 cargo planes. He riveted, drilled, deburred, and engaged in other physical tasks using power tools. In June 1993, he reported to Boeing's medical center complaining of pain in his left elbow and told the physician the riveting gun he used was causing the problem. The physician prescribed painkillers. In October 1993, he reported to the center again and complained of severe shooting pains in his left hand and forearm when he used the riveting gun. Around this time, Boeing transferred Oliver to another job where the tasks were lighter, and his pain lessened. Short of qualified personnel, Boeing moved him back to the cargo door station and demanded 18 hours of overtime per week. Oliver began to complain steadily to his manager about the increasing pain. The manager, unhappy with Oliver's performance, threatened to fire him.

On March 15, 1994, Oliver reported to the medical center and complained of continuous pain in his shoulders, across his back, and in his wrists, especially on the right side of his body. He reported the symptoms had begun 2 years before. The physician diagnosed early carpal tunnel and overuse syndrome, and shoulder bursitis. The physician placed no medical restrictions on Oliver, but suggested wrist braces and gel gloves. By March 24, it was impossible for Oliver to perform his job because of the pain. The physician again refused to place Oliver on medical restrictions, but referred Oliver to a specialist for a nerve conduction study. Oliver resigned from Boeing the same day, although he did see the specialist. He filed an application for hearing on July 7, 1994.

Within 1½ weeks of leaving Boeing, Oliver found employment with a construction company. However, he was forced to quit after

3 months when the company insisted he do work that involved overhead reaching. He found another job with a forklift company where he maintained the company's forklifts and vehicles. The light physical work does not aggravate his condition; however, he makes significantly less money than when he worked at Boeing.

Upon an order of the administrative law judge (ALJ), Dr. Mills examined Oliver and diagnosed tendinitis of the shoulders and carpal tunnel syndrome. Finding that Oliver had probably reached maximum medical improvement, Dr. Mills restricted him to occasional overhead lifting and forbade vibrating power tools, prolonged wrist flexion, and cool environments.

The ALJ rejected Oliver's claim that he was forced to resign from Boeing and denied wage loss compensation. The ALJ awarded Oliver a 31.5% work disability. Boeing applied for Workers Compensation Board (Board) review. The Board amended the ALJ order, holding that Oliver was incapable of working the day he resigned and had acted in good faith. The Board awarded 66% permanent partial general disability, including a 60% wage difference. Boeing appeals.

Boeing contends Oliver violated his duty to seek appropriate employment, as required by *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995). Boeing points out Oliver left the company voluntarily when he was under no medical restrictions. Boeing also claims Oliver never requested accommodated work from the company. Boeing suggests an employee is under a legal duty to request accommodated work from an employer once restrictions are in place.

K.S.A. 1998 Supp. 44-510e(a) allows wage loss compensation if the claimant is making less than 90% of his or her preinjury gross weekly wage. *Foulk* and its progeny, including *Copeland v. Johnson Group, Inc.*, 24 Kan. App. 2d 306, 318-19, 944 P.2d 179 (1997), and *Lowmaster v. Modine Mfg. Co.*, 25 Kan. App. 2d 215, 217, 962 P.2d 1100, *rev. denied* 265 Kan. 885 (1998), create an exception and hold that a claimant is barred from wage loss compensation if he or she is capable of earning 90% or more of the employee's preinjury wage level within medical restrictions but fails to do so. In such a situation, the court acts to prevent a claimant from re-

fusing to work and exploiting the workers compensation system. *Foulk*, 20 Kan. App. 2d at 284. Whether this exception gives rise to a duty to request accommodated work from an employer is a question of law over which this court exercises de novo review. See *P.W. v. Kansas Dept. of SRS*, 255 Kan. 827, 831, 877 P.2d 430 (1994) (existence of a duty is a question of law). Courts construe the Workers Compensation Act (Act) liberally for the purpose of bringing employers and employees within its provisions. Thereafter, the provisions are applied impartially to both employers and employees. K.S.A. 1998 Supp. 44-501(g); see *Wheeler v. Boeing Co.*, 25 Kan. App. 2d 632, 967 P.2d 1085 (1998).

Neither K.S.A. 1998 Supp. 44-510e(a) nor *Foulk*'s policy exception require a claimant to seek post-injury accommodated work from his or her employer in every circumstance. The statute is concerned only with how much is made, not where the claimant is working. *Foulk* and its progeny are concerned with a claimant who is able to work but refuses to do so. Boeing does not cite any law supporting an absolute duty to seek accommodated work from the employer before looking elsewhere.

Just as the Act does not impose an affirmative duty upon the employer to offer accommodated work, *Griffin v. Dodge City Cooperative Exchange*, 23 Kan. App. 2d 139, 147-48, 927 P.2d 958 (1996), *rev. denied* 261 Kan. 1082 (1997), it also does not establish an affirmative duty upon the employee to request accommodated work. Whether a claimant requested accommodated work from an employer is just one factor, viewed along with the rest of the record, in determining whether the claimant in good faith attempted to obtain appropriate work.

Boeing points out its interest in avoiding liability under the Act and argues it would have readily accommodated Oliver once legitimate restrictions were in place. While Boeing raises a notable point, this sort of broad interest balancing is best left to the legislature.

Boeing also argues that Oliver resigned based on his own opinion that he could no longer do the work and before the company had an opportunity to evaluate his medical condition thoroughly. Boeing reasons Oliver's act of bad faith discharged it from subsi-

dizing his less demanding but lower paying job with the forklift company.

The record indicates Boeing had known of Oliver's deteriorating condition since June 1993. The Board found Oliver had requested work restrictions or a transfer and had been refused. His manager ordered him to work 18 hours overtime per week, and when he told her he was unable to do so, she threatened to fire him. The Board found that Oliver was physically unable to do his job the day he resigned. Finally, Oliver immediately found other employment corresponding to his skills and persisted until he found a job that also accommodated his disabilities. There was substantial evidence in the record supporting the Board's findings.

Boeing had clear notice concerning Oliver's physical difficulties and did not act. Oliver resigned of necessity and immediately found new work. The record supports all of the Board's relevant factual findings and establishes that Oliver met his burden of good faith under *Foulk* and *Copeland*.

Affirmed.