(9 P.3d 591)
No. 83,948
CHERYL L. PARSONS, *Appellee*, v. SEABOARD FARMS, INC.,
*Appellant*.

Opinion filed July 28, 2000.

*Gregory D. Worth* and *Douglas M. Greenwald*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellants.

*Lawrence M. Gurney*, of Wilson, Lee & Gurney, of Wichita, for appellee.

Before BRAZIL, C.J., BEIER, J., and J. STEPHEN NYSWONGER, District Judge, assigned.

BRAZIL, C.J.: Seaboard Farms, Inc. (Seaboard) appeals an order of the Kansas Workers Compensation Board (Board) awarding compensation for permanent partial general disability in excess of functional disability to Cheryl L. Parsons.

Seaboard argues that Parsons is not entitled to work disability because she rejected their offer of accommodated employment for reasons unrelated to her work-related injuries.

We affirm.

The facts are largely uncontroverted. Parsons developed bilateral carpal tunnel syndrome while working as a secretary and payroll clerk at Seaboard's plant near Hugoton, Kansas. Seaboard modified Parsons' tasks in an effort to accommodate her injury, but ultimately Parsons was unable to perform clerical work. Parsons' last day of work was in March 1998, and her final wage was $8.47 per hour.

After Parsons' physician released her with permanent restrictions, Seaboard attempted to provide Parsons with accommodated work near her home in Hugoton. Because Seaboard had no local openings which matched Parsons' physical limitations, Seaboard offered her work as a night security guard at its plant in Guymon, Oklahoma. Seaboard offered Parsons a wage of $7.62 per hour, which was 90 percent of Parsons' previous wage. According to the record on appeal, Guymon is 40 to 45 miles from Hugoton.

Even though her physician approved the work, Parsons rejected Seaboard's offer. As Parsons explained at the hearing:

"I'm not a really big person, and working at nights, and as a security guard, I was scared. I just didn't think I could do it. I didn't want to be out on the road at night coming and going. My car is an older car, putting 90 miles a day on it, I just didn't think it would hold up, and then a cut in pay, with all that, I just didn't want to do it."

Parsons also told Seaboard she would accept a position only if it were comparable in pay, travel distance, working hours, and description to her previous job. Seaboard made no further offers. Although Parsons looked elsewhere for work, she was unemployed

at the time of the hearing. Parsons admitted she had limited her search to Hugoton and to work which paid at least $8 per hour. A vocational expert testified Parsons could earn $6.75 per hour in the Stevens County area.

Both the administrative law judge and the Board awarded Parsons compensation for permanent partial general disability in excess of her functional disability. The Board found Parsons acted in good faith in rejecting the security guard position because it was "drastically different than the type of work she had done and the concerns she expressed about the job appear to be reasonable ones." The Board, however, found Parsons had not acted in good faith in limiting her search to jobs in Hugoton which paid at least $8 per hour. Given this finding, the Board imputed to Parsons the wage set by the vocational expert, resulting in a final wage loss of 36 percent.

Permanent partial general disability in excess of functional disability is commonly known as "work disability." See *Cooper v. Mid-America Dairymen*, 25 Kan. App. 2d 78, 78-79, 957 P.2d 1120, *rev. denied* 265 Kan. 884 (1998). On appeal, Seaboard argues Parsons was not eligible for any work disability compensation because she turned down accommodated work which paid 90 percent of her wage at the time of the injury. Seaboard maintains Parsons' failure to even attempt the night security guard position created a statutory presumption against work disability compensation.

Before 1993, K.S.A. 44-510e(a) stated: "There shall be a presumption that the employee has no work disability if the employee engages in any work for wages comparable to the average gross weekly wage that the employee was earning at the time of the injury." K.S.A. 1992 Supp. 44-510e(a). In a case interpreting the pre-1993 version of the statute, this court held the presumption would apply where "the proffered job is within the worker's ability and the worker has refused to even attempt the job." *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 284, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995). The holding in *Foulk* was consistent with the employee's general burden to prove his or her right to an award of compensation. See K.S.A. 1999 Supp. 44-501(a). In other words, one should not expect to sit at home and take advan-

tage of the workers compensation system. See *Foulk*, 20 Kan. App. 2d at 284.

In 1993, the legislature removed the term "presumption" and specified a fixed percentage at which post-injury wages would cut off work disability compensation. See L. 1993, ch. 286, § 34. This version of the statute, applicable in this case, states that an employee is not entitled to compensation for work disability "as long as the employee is engaging in any work for wages equal to 90% or more of the average gross weekly wage that the employee was earning at the time of the injury." K.S.A. 1999 Supp. 44-510e(a).

This court has continued to apply the principles from *Foulk* in cases applying the post-1993 version of the statute. See *Cooper*, 25 Kan. App. 2d at 80-81; *Copeland v. Johnson Group, Inc.*, 24 Kan. App. 2d 306, 319, 944 P.2d 179 (1997). We have rejected the suggestion an employee should receive compensation for work disability when the employee is still capable of earning nearly the same wage. See *Cooper*, 25 Kan. App. 2d at 81. In order to determine if the employee is still capable of earning nearly the same wage, the factfinder must first determine if the employee made a good faith effort to find appropriate employment. See *Copeland*, 24 Kan. App. 2d at 320.

The Board in this case made hybrid findings. While the Board found Parsons' rejection of the night security guard job was in good faith, the Board found Parsons did not otherwise make a good faith effort to find appropriate employment. Given its more general finding, the Board properly calculated Parsons' post-injury income based on expert testimony. *Cf. Copeland*, 24 Kan. App. 2d at 320. Parsons has not appealed from this ruling.

To resolve the issue Seaboard raises, we must determine if the Board erred in finding Parsons' rejection of the night security guard position was in good faith. If the Board did err, Parsons was not eligible for any work disability compensation because the rejected position paid 90 percent of her wages at the time of the injury.

Seaboard contends our standard of review is unlimited, but the Board's determination that an employee acted in good faith is a finding of fact. See *Copeland*, 24 Kan. App. 2d at 320. This finding will be upheld if supported by substantial competent evidence. See

*Depew v. NCR Engineering & Manufacturing*, 263 Kan. 15, 26, 947 P.2d 1 (1997). If the finding is supported by substantial competent evidence, it will be upheld even if evidence in the record would support a contrary finding. See *Shields v. J.E. Dunn Constr. Co.*, 24 Kan. App. 2d 382, 385, 946 P.2d 94 (1997).

Seaboard argues the Board erred when it considered the nature of the accommodated work in its finding of good faith. Seaboard maintains the Board's consideration of the nature of the accommodated work was without legal basis and was contrary to the principles of *Foulk*.

Accommodated work inevitably will differ in some respect from an employee's previous work. In this case, however, the Board found the accommodated work differed in such a way that Parsons' rejection of it comported with her duty of good faith. According to the job description provided by Seaboard, a security guard's duties included controlling visitor access and conducting periodic fence and perimeter inspections. Security guards also could conduct locker inspections and act as a liaison with local law enforcement agencies. Adding to the personal demands of the position, if not necessarily the physical, Parsons would have been obliged to perform her duties at night, 40 miles from home, and in another state. These facts support the Board's finding that Parsons declined the offer in good faith.

In arguing no factors should be considered other than the physical demands of the work, Seaboard relies on *Swickard v. Meadowbrook Manor*, 26 Kan. App. 2d 144, 979 P.2d 1256 (1999). In *Swickard*, an employee had transportation to work only during the second shift. When she was injured, the employer offered her accommodated work on the first shift. This court affirmed the Board's finding that the employee was not entitled to work disability compensation under *Foulk* because she failed to attempt the accommodated work. 26 Kan. App. 2d at 148-150.

*Swickard* is at least partially distinguishable on the facts. The position offered by Seaboard was 40 to 45 miles distant from Parsons' prior workplace, as opposed to *Swickard* where the accommodated work was at the same workplace. See 26 Kan. App. 2d at 145. Here, as in *Swickard*, the accommodated work was on a dif-

ferent shift, but in this case it was at night. The Board credited Parsons' concerns about traveling at night on nearly deserted highways. In considering Parsons' rejection of the accommodated work offer, the Board did not err when it considered factors other than the physical demands of the offered work.

In *Swickard,* moreover, the Board found the employee was *not* entitled to work disability compensation. The employee in *Swickard,* in other words, did not meet the burden to prove a "right to an award of compensation and to prove the various conditions on which [that] . . . right depends." K.S.A. 1999 Supp. 44-501(a). This was a negative finding of fact, and our Supreme Court has made clear such findings are not to be disturbed absent an arbitrary disregard of uncontroverted evidence or an extrinsic consideration such as bias, passion, or prejudice. See *Nance v. Harvey County,* 263 Kan. 542, 551, 952 P.2d 411 (1997). This court in *Swickard* did not find uncontroverted evidence indicating the offer was unreasonable or in bad faith. 26 Kan. App. 2d at 150.

Any inquiry into the good faith of an employee's efforts to find appropriate employment must proceed on a case-by-case basis. Where the Board finds an employee made a good faith effort, the Board's determination will be upheld if supported by substantial competent evidence. Where the Board finds an employee did not make a good faith effort, the Board's determination will be upheld absent an arbitrary disregard of uncontroverted evidence or an extrinsic consideration such as bias, passion, or prejudice. In this case, the Board's determination was supported by substantial competent evidence.

Affirmed.