(77 P.3d 492)
No. 86,489 ■

MICHAEL NEWMAN, *Appellant*, v. KANSAS ENTERPRISES, d/b/a AAA EQUIPMENT AND SUPPLY, and WAUSAU UNDERWRITERS INSURANCE CO., *Appellees*.

Opinion filed March 15, 2002.

*Kelly W. Johnston*, of The Johnston Law Offices, P.A., of Wichita, for appellant.

*Larry Shoaf*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellees.

Before RULON, C.J., BEIER, J., and WAHL, S.J.

BEIER, J.: Claimant Michael Newman appeals the Workers Compensation Board's decision refusing to award him permanent work disability benefits.

Newman was employed by respondent AAA Equipment and Supply (AAA). His responsibilities included new product evaluations, hiring and training of salespeople, product demonstrations, and sales and marketing management. He said his duties also entailed traveling, selling equipment, setting up trade shows, loading and unloading equipment, supervising and training employees, telephone work, and completion of paperwork.

On October 29, 1993, Newman injured his left wrist, left arm, left shoulder, and neck when he slipped in some oil. On November 17, 1993, Newman fell again as he was stepping out of the bucket of a machine he was moving off a delivery truck. As Newman fell,

he hit his back on the edge of the bucket and landed on his bottom. AAA stipulated to the occurrence of these accidents and to the fact they arose out of and in the course of Newman's employment. The two resulting workers compensation claims were consolidated for one set of hearings and award.

Following his injuries, Newman returned to work. He does not dispute that he returned to his usual duties and tasks and required no job modification, other than occasional adjustments in his schedule to permit continuing medical treatment and physical therapy. AAA also put on evidence through its owner that Newman had no difficulty performing his usual tasks after his injuries.

Newman was terminated approximately a year after his first accident. The evidence on the reason for termination was conflicting. AAA's owner testified that Newman was fired for lack of sales, speeding tickets, complaints from customers, inappropriate sexual comments, and a DUI he received while in a company truck. Newman testified that he believed one reason for his termination was his time off because of his injuries. Newman said he had more than one conversation with his employer wherein the employer asked "when this shit was going to stop," apparently referring to the continuing treatment or the time away from work it necessitated. Newman also said he was fired because the employer wanted to decrease its payroll in an attempt to make the business look more attractive to potential buyers.

When ruling on Newman's request for an award based on a work disability under K.S.A. 44-510e(a), the administrative law judge (ALJ) found Newman returned to work immediately after his injuries in an unaccommodated position, getting the same wages and doing precisely the same tasks, until he was terminated. The ALJ specifically stated the record did not reflect that Newman was terminated or refused an accommodated position because of any work-related injuries. Newman therefore was limited to an award based on his functional impairment. The Workers Compensation Board (Board) adopted the findings and conclusions of the ALJ and affirmed.

On appeal, Newman asserts his employer provided him an "accommodated" position merely by allowing him to adjust his sched-

ule around his treatment. He cites no legal authority for this proposition. This does not surprise us, as such a rule would allow any workers compensation claimant to transform his or her job into an "accommodated position" merely by persuading the employer to allow time off for medical follow-up. We decline to adopt such a rule in this case.

Newman next contends the Board erred in finding *Watkins v. Food Barn Stores, Inc.*, 23 Kan. App. 2d 837, 936 P.2d 294 (1997), dispositive. He urges this court to follow the holdings in *Lee v. Boeing Co.*, 21 Kan. App. 2d 365, 899 P.2d 516 (1995), and *Gadberry v. R.L. Polk & Co.*, 25 Kan. App. 2d 800, 975 P.2d 807 (1998), instead.

*Lee* and *Gadberry* are distinguishable.

In *Lee*, the claimant returned to work after his injury in an accommodated position and remained in that job at comparable wages until he was laid off more than a year later for economic reasons. The Board awarded work disability as of the date of the layoff, and this court affirmed. We held:

"Lee presented evidence of a substantial wage decrease after his layoff and expert testimony as to his *loss of ability* to earn a comparable wage. It is not the intent of the legislature to deprive an employee of work disability benefits after a high-paying employer discharges him or her as part of an economic layoff where the employer was *accommodating* the injured employee at a higher wage than the employee could earn elsewhere." (Emphasis added.) 21 Kan. App. 2d at 372.

This case does not follow *Lee* because, as we discussed above, Newman did not return to an accommodated position.

In *Gadberry*, claimant returned to work in an unaccommodated position after her injury and surgery to repair a herniated disk. She was terminated a month later. Respondent claimed the termination was necessary because it had relocated the department where claimant worked. Claimant was unable to find gainful employment after termination and was awarded 50 percent work disability, based on 100 percent wage loss and 0 percent task loss. In determining the amount of claimant's wage loss, the following factors were considered by the Board: claimant's termination at 57 years of age with a significant functional disability and no other work

experience; claimant's inability to find other employment; and claimant's inability to return to work for respondent.

The *Gadberry* court also explicitly relied upon the suspicious timing of termination. Before claimant had her surgery, respondent had assured her that it would not affect her job. The court quoted a passage from the ALJ's award, expressing disbelief in the stated reason for termination and concluding claimant had been treated unfairly.

This case does not follow *Gadberry* because Newman worked a full year before termination. Further, the record amply supports several legitimate reasons for Newman's termination.

The Board correctly relied upon *Watkins*, 23 Kan. App. 2d 837, a much more analogous case.

In *Watkins*, claimant returned to work post-injury and performed the same work for the same wage. The Board found the presumption of work disability applied but was overcome after claimant lost his job, citing *Lee*. This court reversed, pointing out the crucial distinction between the claimant in *Lee*, working in an accommodated position, and the claimant in *Watkins*, working in an unaccommodated position.

The *Watkins* court explained that the logic employed in *Lee* does not follow when an injured worker returns to work in an unaccommodated position:

"If following an injury an employee is physically able to return to work, perform his or her job duties without special accommodation, and earn a wage comparable to his or her pre-injury wage, then by definition that employee does not have a work disability. See K.S.A. 1992 Supp. 44-510e(a). If the employee subsequently loses the job for economic or other reasons, the loss of employment cannot by itself create a work disability, absent a change in the employee's physical condition. In other words, the loss of a job does not change an employee's physical ability to perform work in the open labor market and earn a comparable wage. It is the employee's ability to perform work at a comparable wage which determines work disability, not whether the employee is utilizing that ability. See *Brown v. City of Wichita*, 17 Kan. App. 2d 72, 77, 832 P.2d 365, *rev. denied* 251 Kan. 937 (1992). Where an employee returns to work in an unaccommodated job and earns wages comparable to those earned before his or her injury, the presumption of no work disability applies and will not be rebutted absent evidence of a change in the employee's physical condition." 23 Kan. App. 2d at 839.

The *Watkins* court ultimately found claimant's ability to perform work in the open labor market and earn comparable wages had not changed. The only change came in the form of claimant's decreased earnings since his layoff from respondent. The court stated: "[W]ork disability focuses on the reduction in a claimant's *ability* to earn wages, not on the actual wages lost. [Citation omitted.] Here, Watkins' abilities have remained constant." 23 Kan. App. 2d at 840.

Like the claimant in *Watkins*, Newman returned to work after his injuries and performed the same tasks for the same pay. There is substantial evidence in the record that Newman subsequently lost his job for reasons related to his work performance and not his injury.

The Board did not err in finding that Newman was not entitled to work disability.

Affirmed.