(61 P.3d 101)

No. 88,472

KELLY A. CAVENDER, *Claimant/Appellee*, v. PIP PRINTING, INC., *Respondent/Appellant*, and DODSON INSURANCE GROUP, *Insurance Carrier/Appellant*.

Opinion filed January 17, 2003.

*Joseph Seiwert*, of Snider & Seiwert, L.L.C., of Wichita, for the appellee.

*Stephen J. Jones*, of Law Office of Stephen Jones, of Wichita, for the appellants.

Before BEIER, P.J., PIERRON, J., and PADDOCK, S.J.

PIERRON, J.: PIP Printing, Inc., and Dodson Insurance Group (PIP) appeal the determination of work disability granted by the Workers Compensation Board (Board) to Kelly Cavender. PIP argues the Board improperly computed Cavender's work disability based on a 100% wage loss.

The facts in this case are for the most part undisputed. In October 1999, Cavender, a printing press operator at PIP, was injured while lifting a 70-pound box of paper. Over the next several months, she received medical treatment. In January 2000, PIP terminated Cavender's employment, and she filed a workers compensation claim on January 18, 2000. Cavender eventually had back surgery in late March 2000 and was released to go back to work in September 2000 with work restrictions, including multiple lifting restrictions.

After her injury, PIP never offered Cavender accommodated employment. On September 24, 2000, Cavender found a job with Envelope Manufacturers (Envelope) working in customer sales.

She worked at Envelope for $8 per hour and was supposed to be full time, but usually was sent home early from work. Cavender testified that her boss at Envelope made unwelcome contact with her, including hugging and touching, and that he engaged in sexual relations with a coworker, not his wife, at the workplace. Cavender stated that her boss' conduct bothered her a great deal, to the point she quit on December 31, 2000. Cavender was unable to find other employment.

There was no dispute that Cavender's functional impairment rating was 15% whole body impairment and she was entitled to work disability. The parties agreed that Cavender suffered a task loss of 12.5%. However, the parties greatly contested what percentage of post-injury wage loss would be used to determine Cavender's work disability. PIP argued Cavender had exhibited bad faith in terminating her position with Envelope and, therefore, her wage loss should be determined on her ability. Cavender argued she terminated her position with Envelope in good faith and, therefore, her wage loss should be determined by actual wage loss.

The Administrative Law Judge (ALJ) sided with PIP and found Cavender's wage at Envelope would be imputed to her wage loss in determining work disability.

"The real issue concerns the Claimant's wage loss. The Claimant argues that she was forced to resign from Envelope Manufacturers because of sexual harassment and should be entitled to 100% wage loss. Assuming the Court were to find this to be the case, that may give rise to an action against Envelope Manufacturing; however, it may not give rise to an increased wage loss under Workers Compensation. Based on the Claimant's testimony, the Court finds that the Claimant did not self-terminate her employment for reasons of sexual harassment but terminated her employment for actions by her [employer] which violated her sense of morality. The Court will therefore proceed as if the Claimant were still employed with that employer for the purposes of determining wage loss. The testimony was that if the Claimant were to have stayed with that employer that she would have received the same fringe benefits that she received with the Respondent. The Court will, however, take into consideration that the Claimant only averaged $248.13 per week for her base wage. This would give us a 42% wage loss."

The Board took a view opposite the ALJ and determined that Cavender had exhibited good faith in her job search after her injury and was successful in obtaining employment with Envelope. The

Board found that her job with Envelope was an "untenable work environment" and that she had "acted reasonably and in good faith in making the decision to quit that job." She then made a good faith effort to find employment, but was unsuccessful. The Board held that Cavender's good faith actions necessitated use of her actual wage loss in determining work disability. The Board found Cavender had a 100% wage loss following her injury, a 48% wage loss while she worked at Envelope, and a 100% wage loss after she quit her job at Envelope. The Board stated:

"In this case, because there is no gap in benefits, the award of permanent partial disability compensation calculates the same by using only the last wage loss percentage and the last percentage of work disability. Therefore, the award will be calculated based upon a 56.25 percent permanent partial disability which is arrived at by averaging the 12.5% task loss with the 100% wage loss."

PIP argues the Board incorrectly computed Cavender's work disability based on a 100% wage loss. PIP contends Cavender is not entitled to work disability derived from a 100% wage loss when she voluntarily terminated her post-injury employment based on matters unrelated to her workers compensation injury or her physical restrictions. PIP claims Cavender's voluntary termination should limit her work disability using an imputed wage based on her actual employment.

K.S.A. 2001 Supp. 44-556(a) specifically subjects workers compensation appeals to the Act for Judicial Review and Civil Enforcement of Agency Actions (Act), K.S.A. 77-601 *et seq.* The Act limits the relief granted on appeal. K.S.A. 77-621(c). K.S.A. 77-621(c) states that the court shall grant relief only if it determines any one or more of the eight conditions stated are present, including the following:

"(4) the agency has erroneously interpreted or applied the law;

. . . .

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act."

K.S.A. 44-510e(a) allows work disability in excess of functional impairment only if the claimant is making less than 90% of his or

her preinjury gross weekly wage. If this percentage is met, K.S.A. 44-510e(a) provides the equation for computing work disability:

"The extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the employee, in the opinion of the physician, has lost the ability to perform the work tasks that the employee performed in any substantial gainful employment during the fifteen-year period preceding the accident, averaged together with the difference between the average weekly wage the worker was earning at the time of the injury and the average weekly wage the worker is earning after the injury."

The cases interpreting K.S.A. 44-510e have added the requirement that an employee must set forth a good faith effort to secure appropriate employment before work disability will be awarded. See *Copeland v. Johnson Group*, 24 Kan. App. 2d 306, Syl. ¶ 7, 944 P.2d 179 (1997); *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 284, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

The good faith of an employee's efforts to find or retain appropriate employment is determined on a case-by-case basis. "Where the Board finds an employee made a good faith effort, the Board's determination will be upheld if supported by substantial competent evidence." *Parsons v. Seaboard Farms, Inc.*, 27 Kan. App. 2d 843, 848, 9 P.3d 591 (2000). Whether the Board's findings of fact are supported by substantial competent evidence is a question of law. See *Berry v. Boeing Military Airplanes*, 20 Kan. App. 2d 220, 223, 885 P.2d 1261 (1994).

"In workers compensation cases, substantial evidence is ' "evidence possessing something of substance and relevant consequence and carrying with it fitness to induce conviction that the award is proper, or furnishing substantial basis of fact from which the issue tendered can be reasonably resolved." [Citation omitted.]' *Angleton v. Starkan, Inc.*, 250 Kan. 711, 716, 828 P.2d 933 (1992)." *Foulk*, 20 Kan. App. 2d at 285.

In *Foulk*, an employee refused an employer's offer of accommodated employment and then claimed that she was entitled to work disability. The *Foulk* court disagreed stating that "it would be unreasonable . . . to conclude that the legislature intended to encourage workers to merely sit at home, refuse to work, and take advantage of the workers compensation system." 20 Kan. App. 2d

at 284. The holding in *Copeland* expanded *Foulk* by adding the good faith test:

"In attempting to harmonize the language of K.S.A. 44-510e(a) with the principles of *Foulk*, we find the factfinder must first make a finding of whether a claimant has made a good faith effort to find appropriate employment. If such a finding is made, the difference in pre-and post-injury wages based on the actual wages can be made. This may lead to a finding of lesser wages, perhaps even zero wages, notwithstanding expert opinion to the contrary.

"If a finding is made that a good faith effort has not been made, the factfinder will have to determine an appropriate post-injury wage based on all the evidence before it, including expert testimony concerning the capacity to earn wages. Since no such determination was made here, we reverse and remand on that issue also." 24 Kan. App. 2d at 320.

PIP warns the court to not extend the good faith test beyond the intent and purpose of the workers compensation system. PIP contends the good faith test is appropriate when an employee is terminated from employment either from an accommodated position with the same employer, due to the employment being outside physical restrictions, or because circumstances have changed justifying a refusal of accommodated employment. See *Parsons v. Seaboard Farms Inc.*, 27 Kan. App. 2d 843 (accommodated job 45 miles away and on night shift); *Oliver v. Boeing Co.*, 26 Kan. App. 2d 74, 977 P.2d 288, *rev. denied* 267 Kan. 889 (1999) (work began to exceed employee's restrictions); *Lee v. Boeing Co.*, 21 Kan. App. 2d 365, 899 P.2d 516 (1995) (employee terminated from accommodated position due to economic lay offs). However, PIP argues disability benefits should be limited or denied for claimants who terminate future employment based on reasons wholly apart from their injuries or restrictions.

The Workers Compensation Act does not impose an affirmative duty upon the employer to offer accommodated work. See *Griffin v. Dodge City Cooperative Exchange*, 23 Kan. App. 2d 139, 147-48, 927 P.2d 958 (1996), *rev. denied* 261 Kan. 1084 (1997). If an employer does not offer accommodated work, the employee still has a duty to look for work within his or her restrictions. However, if an employee sets forth a good faith effort and cannot find work

earning at least 90% of their preinjury wage, then the past employer is responsible for work disability.

The purpose of the good faith test, at its very core, is to prevent employees from taking advantage of the workers compensation system. *Copeland,* 24 Kan. App. 2d at 319. In situations where postinjury workers leave future employment, the good faith test is extended to determine whether leaving was reasonable. Clearly, in the cases cited by PIP, leaving employment was reasonable when the employment became outside physical restrictions or the changed circumstances justified a refusal of accommodated employment. However, the reasonableness of leaving employment is not limited to a decision based on work restrictions or injuries.

The present case is closest in nature, while still not on point, to those cases where an injured employee is terminated due to economic downturn and layoffs and the employee is found to still be entitled to work disability. Those cases present a situation where termination or leaving employment is unrelated to the workers compensation injury or restrictions. The *Boeing* court stated: "It is not the intent of the legislature to deprive an employee of work disability benefits after a high-paying employer discharges him or her as part of an economic layoff where the employer was accommodating the injured employee at a higher wage than the employee could earn elsewhere." 21 Kan. App. 2d at 372.

The case at bar does not present a situation where the employee is denied work disability based on termination for cause. Kansas courts have found that under certain circumstances, a worker is precluded from obtaining permanent partial disability compensation. In *Perez v. IBP, Inc.,* 16 Kan. App. 2d 277, 826 P.2d 520 (1991), Perez argued that his work-related injuries prevented him from engaging in any type of employment following his termination from IBP for absenteeism. The *Perez* court recognized that "K.S.A. 1990 Supp. 44-510e(a) creates a presumption that no work disability exists under circumstances where the worker returns to the same work, for the same wage, after an injury." 16 Kan. App. 2d at 279. This court noted the evidence revealed that Perez returned to work almost immediately after his injury, worked 33 out of 57 days, and was ultimately terminated for absenteeism. This court

concluded by affirming the award limiting Perez to his demonstrated functional impairment and not granting any work disability. 16 Kan. App. 2d at 279.

The parties cite two other cases which they believe are analogous to this situation.

In *Watkins v. Food Barn Stores, Inc.*, 23 Kan. App. 2d 837, 936 P.2d 294 (1997), the claimant was injured but able to return to work in an unaccommodated job at a wage comparable to that earned before his injury. The court found under those facts that the presumption of no work disability applies and will not be rebutted absent evidence of a change in the employee's physical condition. 23 Kan. App. 2d at 839.

In *Tharp v. Eaton Corp.*, 23 Kan. App. 2d, 895, 940 P.2d 66 (1997), the court distinguished the rule in *Watkins* where a sham position was created which did not require any work. The court found the statutory presumption of no work disability was not invoked due to the artificial accommodated position not being an actual work situation. 23 Kan. App. 2d at 898.

Neither of these cases is directly on point, but they do underline the purpose of the workers compensation system to compensate workers based on actual loss of earning capacity.

Under the facts of this case, there was substantial evidence supporting the Board's finding that Cavender met the burden of showing a good faith effort to find appropriate employment.

"[A]bility or capacity to earn wages only becomes a factor when a finding is made that a good faith effort to find appropriate employment has not been made. . . . Once a finding has been made that the claimant has established a good faith effort, the differences in pre- and post-injury wages can be based on the actual wages made." *Helmstetter v. Midwest Grain Products, Inc.*, 29 Kan. App. 2d 278, 281, 28 P.3d 398 (2001).

We stress that the facts of this case appear to clearly indicate, for a number of reasons, a hostile workplace which practically compelled Cavender to resign. The fact that the reason for her leaving this employment was not injury related is not controlling. The issue is one of good faith attempts by Cavender to find employment.

There is no evidence in this case of bad faith on the part of Cavender to take advantage of the workers compensation system.

There is no dispute that she exhibited a good faith effort to find employment before and after she left Envelope but was simply unsuccessful. The fact that she left her employment with Envelope because of allegations of sexual harassment and open sexual relations in the work place does not equate to bad faith under the Workers Compensation Act. Consequently, the Board correctly determined Cavender's wage loss utilizing her actual wage earnings following her injury.

Affirmed.