(975 P.2d 807)
No. 77,312

VALERIE GADBERRY, *Claimant/Appellee/Cross-Appellant,* v. R. L. POLK & COMPANY, *Respondent/Appellant/Cross-Appellee,* and TRANSPORTATION INSURANCE COMPANY, *Insurance Carrier/Appellant/Cross-Appellee.*

Opinion filed January 23, 1998.

*Kurt W. Ratzlaff* and *Christopher J. McCurdy,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Wichita, for appellants.

*W. Walter Craig,* of Law Offices of Prochaska & Scott, of Wichita, for appellee.

Before MARQUARDT, P.J., PIERRON, J., and NANCY E. PARRISH, District Judge, assigned.

PARRISH, J.: R. L. Polk & Company and Transportation Insurance Company (Polk) appeal from the decision of the Workers Compensation Board (Board) awarding workers compensation benefits to Valerie Gadberry. Gadberry cross-appeals, challenging the constitutionality of K.S.A. 44-501(h). Gadberry alleges that the offset of employer-provided retirement benefits unfairly discriminates against workers who have earned those benefits.

Gadberry was a supervisor for the quality control department at Polk, a printing plant that manufactures city directories for the United States and Canada. On January 21, 1994, Gadberry sustained a back injury when she reached over her head and lifted a 15-pound directory from a shelf.

Gadberry was treated by Dr. Robert Eyster, an orthopedic surgeon. On October 3, 1994, Dr. Eyster performed surgery on Gadberry to repair a herniated disk. On October 24, 1994, Gadberry returned to work, and on November 30, 1994, Gadberry was terminated. According to Polk, Gadberry was terminated because it had relocated its quality control department from the printing plant where Gadberry worked to the district offices.

Gadberry tried unsuccessfully to obtain other employment. Gadberry applied for and subsequently received retirement and social security disability benefits.

The administrative law judge (ALJ) found that Gadberry had sustained a 19 percent functional disability to the body as a whole and a 50 percent work disability. However, the ALJ also found that Polk was entitled to a credit pursuant to K.S.A. 44-501(h) because Gadberry was receiving social security disability and employer-provided retirement benefits. This resulted in an award based solely upon Gadberry's 19 percent functional impairment.

Gadberry appealed to the Board. The Board affirmed the ALJ's award in part and reversed it in part. The Board found that the

credit given to Polk for the social security disability benefits was improper and based its award upon a 50 percent work disability. Polk appeals.

Polk argues that Gadberry's retirement following her termination precludes a finding of work disability.

This issue involves the interpretation of a statute, which is a question of law, and this court's review is unlimited. *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

"It is the function of a court to interpret a statute to give it the effect intended by the legislature.

"The ruling of an administrative agency on questions of law, while not as conclusive as its findings of facts, is nonetheless persuasive and may carry with it a strong presumption of correctness.

"The party challenging the validity of the agency's action bears the burden of proving the invalidity of the action." *In re Application of Zivanovic*, 261 Kan. 191, Syl. ¶¶ 1-3, 929 P.2d 1377 (1996).

"Under the doctrine of operative construction, the court will give deference to an agency's interpretation of the law. If, however, the ruling court finds that the administrative body's interpretation is erroneous as a matter of law, the court should take corrective steps; the determination of an administrative body of questions of law is not conclusive, and, while persuasive, is not binding on the courts." *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, Syl. ¶ 9, 834 P.2d 368 (1992).

To arrive at a fair and accurate assessment of the effect of work-related injuries, the Kansas Legislature has, throughout the life of the Workers Compensation Act, considered several compensatory theories. This court reviewed the legislative evolution of the work disability concept in *Lee v. Boeing Co.*, 21 Kan. App. 2d 365, 368-71, 899 P.2d 516 (1995). Although various formulas have been adopted in an effort to ascertain a fair measurement of a worker's disability, prior to 1993, the formulas were primarily based on the concept of compensation for the loss of *abilities*—the ability to earn wages and/or the ability to perform work. For various reasons, measuring disability compensation by the loss of abilities resulted in concerns about increased litigation and higher insurance premiums. Therefore, in 1993, the Kansas Legislature introduced a new factor into the equation—actual wage loss. The new two-part

test for finding and measuring work disability includes both a measurement of the loss of ability to *perform work tasks* and *actual loss of wages* resulting from the worker's disability. K.S.A. 44-510e(a) provides, in pertinent part:

"The extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the employee, in the opinion of the physician, has lost the ability to perform the work tasks that the employee performed in any substantial gainful employment during the fifteen-year period preceding the accident, averaged together with the difference between the average weekly wage the worker was earning at the time of the injury and the average weekly wage the worker is earning after the injury."

Here, the Board adopted the ALJ's finding that Gadberry had not met her burden of proof that she had suffered a task loss.

"In a workers compensation case, the finder of fact's determinations should be affirmed if they are supported by substantial competent evidence." *Foulk*, 20 Kan. App. 2d at 285.

"In workers compensation cases, substantial evidence is evidence possessing something of substance and relevant consequence, and carrying with it fitness to induce conviction that the award is proper, or furnishing substantial basis of fact from which the issue tendered can be reasonably resolved." *Gleason v. Samaritan Home*, 260 Kan. 970, Syl. ¶ 2, 926 P.2d 1349 (1996).

Even though K.S.A. 44-510e(a) requires the opinion of a physician as to task loss, Gadberry argues that under *Tovar v. IBP, Inc.*, 15 Kan. App. 2d 782, 784, 817 P.2d 212, *rev. denied* 249 Kan. 778 (1991), "medical evidence is not essential to the establishment of the existence, nature, and extent of an injured worker's disability." However, *Tovar* was decided prior to the legislative change in 1993 and does not interpret the current language of K.S.A. 44-510e(a) which specifically requires the opinion of a physician. Since Gadberry did not offer the opinion of a physician regarding her task loss, she has not met her burden of proof.

The Board adopted the ALJ's finding that Gadberry sustained a 100 percent wage loss. In determining the amount of Gadberry's wage loss, the following factors were considered: Gadberry's termination by Polk at 57 years of age with a significant functional disability and no other work experience; Gadberry's inability to find

other employment; and Gadberry's inability to return to work for Polk.

Polk contends that both the ALJ and the Board found that Gadberry was entitled to benefits based upon a work disability due to her economic layoff. This argument is a misstatement of the finding.

The ALJ found that Gadberry had returned to work prior to being terminated and that while there may have been an economic layoff, it did not preclude her from receiving benefits. The ALJ relied on *Lee,* 21 Kan. App. 2d at 372, where this court found: "It is not the intent of the legislature to deprive an employee of work disability benefits after a high-paying employer discharges him or her as part of an economic layoff where the employer was accommodating the injured employee at a higher wage than the employee could earn elsewhere."

The *Lee* court found that to hold otherwise would invite abuses:

"A large, well-paying employer could return an employee to a light duty job at his or her pre-injury wage. After a period of time, the employer could discharge the injured employee in the midst of downsizing. In this way, the employer would save money by paying the injured worker an inflated salary in an accommodated job for a period of time, then discharging the worker and avoiding work disability benefit payments based on the presumption." 21 Kan. App. 2d at 372.

While there is no evidence that Polk was accommodating Gadberry on a light-duty job, the timing of her termination is suspect in that she had returned to work just a few weeks prior to being terminated. The record reflects that Gadberry had been advised prior to her surgery that Polk was going to be downsizing but that she would not be affected.

The Board affirmed the ALJ's finding that Gadberry was not precluded from a work disability. The ALJ's award stated:

"While respondent's justification for Claimant's termination was that her department had been shut down or discontinued, the Court notes that at least two of Claimant's subordinates, whom Claimant had trained, were retained by respondent. The work previously performed by [C]laimant continues to be performed, in large measure, by other employees of respondent in the Hutchinson, Kansas facility. Claimant, at 57 years of age, with a significant functional disability and no other work experience, was terminated.

"... While Respondent has offered evidence of an economic layoff, the Court notes that Claimant's work continues to be performed in Hutchinson, Kansas by other employees, including employees trained by Claimant. While there may have been a reorganization of job titles, Claimant, a 37 year employee of respondent, appears to have been treated unfairly."

Gadberry's return to work at the same wage that she had been receiving prior to her injury does not preclude a finding of wage loss since she was given notice of her termination just a few weeks later, and the termination was based on an economic layoff. Pursuant to *Lee*, Gadberry became eligible for compensation on a work disability upon her termination, one component of which is wage loss.

Polk argues that Gadberry has no wage loss since she voluntarily removed herself from the work force by retiring. Polk cites *Brown v. City of Wichita*, 17 Kan. App. 2d 72, 832 P.2d 365, *rev. denied* 251 Kan. 937 (1992), as support for this argument.

Prior to the 1993 amendments to the Workers Compensation Act, *actual wage loss* was a factor in measuring compensation for *temporary* disabilities but not for permanent disabilities. Actual wage loss was an appropriate factor in a temporary disability case because temporary disability benefits were intended to compensate a worker for his or her temporary reduction in wages while recuperating from a work-related injury. *Brown*, 17 Kan. App. 2d at 76. Permanent partial disability benefits, on the other hand, were intended to compensate a worker for the loss of his or her permanent ability to perform work in the open labor market and to earn comparable wages; therefore, the actual wage loss was not relevant. 17 Kan. App. 2d at 77.

Although *Brown* only considered the effect of voluntary retirement on *permanent* disability benefits, the court noted that because *temporary* partial disability is based on actual wages lost, it "appears that voluntary retirement precludes recovery of temporary partial general disability." 17 Kan. App. 2d at 77.

Polk argues that because the 1993 amendments added actual wage loss as a component in determining permanent partial disability, *Brown* should be applied to preclude a finding of wage loss when a worker retires.

However, K.S.A. 44-501(h), which was enacted subsequent to *Brown*, provides for an offset to employers for retirement benefits:

"If the employee is receiving retirement benefits under the federal social security act or retirement benefits from any other retirement system, program or plan which is provided by the employer against which the claim is being made, any compensation benefit payments which the employee is eligible to receive under the workers compensation act for such claim shall be reduced by the weekly equivalent amount of the total amount of all such retirement benefits, less any portion of any such retirement benefit, other than retirement benefits under the federal social security act, that is attributable to payments or contributions made by the employee, but in no event shall the workers compensation benefit be less than the workers compensation benefit payable for the employee's percentage of functional impairment."

In addition, K.S.A. 44-510e(a) provides an objective determination of wage loss—the difference between the average weekly wage the worker was earning at the time of the injury and the average weekly wage the worker was earning after the injury. The plain language of K.S.A. 44-510e(a) does not set out any exceptions to the mathematical calculations. When considering the Workers Compensation Act as a whole, no preclusion of wage loss due to retirement is required under K.S.A. 44-510e(a) because K.S.A. 44-501(h) provides for an offset to the employer if the worker is receiving employer-provided retirement benefits.

Kansas courts have found that under certain circumstances, a worker is precluded from obtaining benefits. In *Foulk*, the claimant was denied benefits because she refused rehabilitative training and subsequent employment. The *Foulk* court found that a claimant should not be able to set up a situation of nonemployment by quitting a job or refusing employment. 20 Kan. App. 2d at 284. However, such is not the case with Gadberry.

Gadberry would have continued to work at Polk if she had not been terminated. The record reflects that Gadberry applied for retirement benefits subsequent to her termination because she needed health insurance. Even after she had applied for retirement benefits, Gadberry sought employment with numerous employers within the community. Gadberry did not refuse employment; it was never offered to her.

We affirm the Board's findings that Gadberry sustained a 100 percent wage loss, which, when averaged with her 0 percent task loss, results in a 50 percent work disability to be reduced by her retirement income pursuant to statute.

## CROSS-APPEAL

In its reply brief, Polk argues that this court is without jurisdiction to consider Gadberry's cross-appeal on the constitutionality of K.S.A. 44-501(h). Polk contends that because Gadberry did not file a cross-appeal on this issue, she is precluded from raising it on appeal.

"To perfect an appeal from a final order of the Workers Compensation Board, an appeal must be filed with the Court of Appeals within 30 days of the date of the order. Three additional mailing days are not permitted." *Jones v. Continental Can Co.*, 260 Kan. 547, Syl. ¶ 6, 920 P.2d 939 (1996). On December 18, 1996, Gadberry filed a motion with this court to file her cross-appeal out of time, which was granted and docketed on January 2, 1997. Therefore, the filing of the cross-appeal was timely.

Gadberry contends that K.S.A. 44-501(h) violates her right to equal protection because it allows her employer to receive a credit for employer-provided retirement benefits.

In *Injured Workers of Kansas v. Franklin*, 262 Kan. 840, 942 P.2d 591 (1997), the offset provision for employer-funded retirement plans in K.S.A. 44-501(h) was examined.

"We hold the legislature intended to prevent duplication of wage loss replacement with the offset provision. The legislature concluded that it did not make sense to prevent duplication of replacement wages from social security benefits that were partially employer funded and not prevent such duplication of wages from employer-funded private pensions. Thus, the legislature allowed employer contributions in private pension plans, paid to retired injured workers, to offset employer-funded workers compensation benefits paid to the same injured workers, so as to prevent duplication of wage loss replacement. This is a public policy issue. The legislature believes such an offset will encourage employers to furnish retirement plans for employees because the employer will not be required to duplicate wage replacement should an injured worker retire. The prevention of wage loss duplication is a legitimate State goal, and the offset provisions for employer-funded retirement plans (social security or private pensions) are rationally

related to this goal. K.S.A. 44-501(h) does not violate equal protection." 262 Kan. at 872.

"This court is duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from that precedent." *State v. Jones*, 19 Kan. App. 2d 913, 915, 878 P.2d 845, *rev. denied* 255 Kan. 1005 (1994).

Affirmed.