(83 P.3d 800)
No. 89,139

DARLA J. BECK, *Claimant/Appellee,* v. MCI BUSINESS SERVICES, INC., *Respondent/Appellant,* and ZURICH INSURANCE COMPANY, *Insurance Carrier/Appellant.*

Opinion filed March 14, 2003.

*Stephen J. Jones*, of Law Office of Stephen Jones, of Wichita, for the appellants.

*Brian D. Pistotnik*, of Affiliated Attorneys of Pistotnik Law Office, P.A., of Wichita, for the appellee.

Before ELLIOTT, P.J., LEWIS, J., and STEPHEN D. HILL, District Judge, assigned.

LEWIS, J.: Claimant Darla J. Beck filed this action in order to recover work disability from appellants MCI Business Services, Inc. (MCI) and Zurich Insurance Company under the Workers Compensation Act. The Board awarded work disability, and appellants appeal.

The first issue raised by appellants is that there is not sufficient evidence to support the award by the Board on claimant's weekly wage. We disagree.

Claimant was a rather large woman, weighing in excess of 300 pounds. She was employed primarily as a telemarketer. She was injured at an MCI awards banquet at a hotel. Although appellants claim otherwise, claimant provided evidence that the employees of MCI were required to attend the awards banquet. Claimant received a sales award at the banquet and was walking back to her seat in the banquet hall. Her injuries occurred when a coworker pulled a chair out from under her, causing her to fall to the floor and land on her buttocks. The coworker explained that he moved the chair because he believed it belonged to his supervisor and not to claimant. Claimant was injured by this incident and reported it immediately. She went to the physician suggested by MCI for evaluation and treatment.

Dr. Mark Dobyns gave her physical therapy and other treatment for a couple of months. However, after her release from Dr. Dobyns, she continued to have pain in her lower back and numbness in her legs.

Claimant maintained that she was a full-time employee. However, according to the wage statement, she did not regularly work

40 hours per week. She explained that she was required to be available 40 hours per week; however, if she got her job done early, she was allowed to go home. Claimant was apparently a very efficient worker, and the average hours she worked for the 6 months prior to the date of injury was 33.39 hours per week.

Claimant worked for a period of time at MCI after her injury but was ultimately terminated by MCI for reasons unrelated to her injury.

After being terminated, she received unemployment benefits for 6 months. She applied for work at least two places per week, but any employment she was offered did not have a wage that she would accept. She worked for awhile at Sure-Tel as a manager of a phone company. She worked for that company for 3 months until the company closed its Kansas offices. Two months later, she went to work as an appointment setter at Together Dating, a personal introduction service, and we assume she works there at the present time.

Claimant was evaluated by several physicians. Dr. Pedro Murati evaluated her and confirmed she sustained a lumbar strain and left sacroiliac joint dysfunction as a causal result of the fall. Dr. Murati provided a 5 percent functional impairment based on his diagnoses and an additional 6 percent impairment due to the range of motion loss of her lower back. Dr. Murati imposed some difficult work restrictions for an individual who made her living talking on the telephone. Among other things, claimant was told she could sit, stand, or walk, but should not do that throughout the entire day. Dr. Murati testified claimant had a 50 percent task loss.

She next saw Dr. Philip Mills. Dr. Mills rated her with a 5 percent permanent functional impairment due to the work-related injury. Dr. Mills indicated part of the restrictions he placed upon claimant were due to her 300-pound weight but, in principle, the restrictions were due to the accident.

An expert in task loss testified that claimant was able to perform 12 of the 15 tasks listed on the evaluation form. Accordingly, this expert stated that claimant would be able to perform tasks of a telemarketer.

Insofar as her wages are concerned, claimant earned an average of $900.78 per week when working for MCI. She made $403.85 per week for Sure-Tel. At the time of the hearing, she was working for Together Dating for $412.50 per week.

The administrative law judge (ALJ) determined that claimant had a task loss of 25 percent. He also found a wage loss of 54 percent and a work disability of 39.5 percent. Her total award was $62,773.70 for general body work disability.

MCI appealed this award to the Workers Compensation Board. The Board altered the award entered by the ALJ. It adjusted claimant's job task loss to 26 percent. The Board also found a functional impairment between 5 and 11 percent, and ultimately concluded that her functional impairment rating was 8 percent to the body as a whole. With its adjustments, claimant received an award of $54,657.93.

Our standard of review in a case of this nature is as follows:

"The determination of whether the Board's findings of fact are supported by substantial competent evidence is a question of law. In workers compensation cases, substantial evidence is evidence possessing something of substance and relevant consequence and carrying with it fitness to induce conviction that the award is proper, or furnishing a substantial basis of fact from which the issue tendered can be reasonably resolved. The substantial competent evidence test reviews the evidence in the light most favorable to the prevailing party." *Griffin v. Dale Willey Pontiac-Cadillac-GMC Truck, Inc.,* 268 Kan. 33, 34, 991 P.2d 406 (1999).

In reviewing the Board's decision, we will not reweigh the evidence or evaluate the credibility of witness testimony.

Appellants first argue that the Board erred in calculating claimant's average weekly wage because the evidence showed that she did not work a 40-hour work week. As pointed out earlier, her average work week for the 6 months prior to the injury was 33.39 hours.

K.S.A. 2002 Supp. 44-511(a)(5) states:

"The term 'full-time hourly employee' shall mean and include only those employees paid on an hourly basis who are not part-time hourly employees, as defined in this section, and who are employed in any trade or employment where the customary number of hours constituting an ordinary working week is 40 or more hours per week, or those employees who are employed in any trade or employ-

ment where such employees are considered to be full-time employees by the industrial customs of such trade or employment, regardless of the number of hours worked per day or per week."

K.S.A. 2002 Supp. 44-511(b)(4)(B) provides that the straight-time weekly wage is determined by using 40 hours per week.

The record indicates that claimant was regularly scheduled to work 40 hours per week. Although she often left early due to having met her quotas, she was required to be available to work 40 hours per week.

We conclude that claimant meets the definition of a full-time employee since she was required to be available 40 hours per week, and her average weekly wage was to be determined using the 40-hour work week. We affirm the decision of the Board to that effect.

Appellants next argue the Board erred in concluding that claimant's injury arose out of and in the course of employment.

"The words, 'arising out of and in the course of employment' as used in the workers compensation act shall not be construed to include injuries to employees while engaged in recreational or *social events under circumstances where the employee was under no duty to attend* and where the injury did not result from the performance of tasks related to the employee's normal job duties or as specifically instructed to be performed by the employer." (Emphasis added.) K.S.A. 2002 Supp. 44-508(f).

Appellants argue claimant was under no duty to attend the event at which she was injured. That argument is without support in the record. The uncontradicted evidence is that MCI required its employees to attend the banquet.

We hold that claimant's uncontroverted testimony indicating mandatory attendance at the banquet is substantial competent evidence which supports the Board's decision that the injury arose out of and in the course of her employment.

Finally, appellants argue there was not sufficient evidence to support the finding that claimant was entitled to work disability.

Claimant's recovery for work disability is governed by K.S.A. 44-510e(a) which provides in part:

"Permanent partial general disability exists when the employee is disabled in a manner which is partial in character and permanent in quality and which is not covered by the schedule in K.S.A. 44-510d and amendments thereto. The extent

of permanent partial general disability shall be the extent, expressed as a percentage, to which the employee, in the opinion of the physician, has lost the ability to perform the work tasks that the employee performed in any substantial gainful employment during the fifteen-year period preceding the accident, averaged together with the difference between the average weekly wage the worker was earning at the time of the injury and the average weekly wage the worker is earning after the injury. In any event, the extent of permanent partial general disability shall not be less than the percentage of functional impairment."

Issues involving interpretations of statutory provisions are questions of law over which appellate courts have unlimited review. While an appellate court gives deference to the Board's interpretation of the law, if such interpretation is applied erroneously, the court may grant relief. *Pruter v. Larned State Hospital*, 271 Kan. 865, 868, 26 P.3d 666 (2001).

The principal argument by MCI is that claimant was able to return to work for MCI in an unaccommodated position after her injury. Her termination did not have anything to do with her injury but was for failure to verify the sale of services to a disconnected number. MCI argues that claimant is currently able to perform the tasks of her preinjury job and is not entitled to work disability benefits.

Although there are a number of cases on the issue and some of them appear to be contradictory, a case we believe controls this decision is *Gadberry v. R.L. Polk & Co.*, 25 Kan. App. 2d at 800, 804, 975 P.2d 807 (1998). In *Gadberry*, we held that the fact that an employee was terminated due to reasons other than her injury did not preclude an award of wage loss for work disability benefits. *Gadberry* interprets the statute to allow work disability benefits under these circumstances.

In this case, claimant's termination was not due to economic reasons, but claimant was terminated because it appeared that a supervisor might be responsible for an incorrect sale. We see this as a distinction without a difference. The evidence indicates that claimant suffered a task loss, and that loss would make it more difficult for her to find a position in the open market where she would earn a comparable wage. We conclude that under these facts, claimant was entitled to her award of work disability benefits.

We hold that substantial competent evidence supports the Board's finding in this case, and we affirm the Board's decision.

Affirmed.