(116 P.3d 38)

No. 93,033

PATRICK J. ROSKILLY, *Claimant/Appellee*, v. THE BOEING COMPANY, *Respondent/Appellant*, and INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, *Insurance Carrier/Appellant*.

—

Opinion filed July 29, 2005.

*Kirby A. Vernon*, of Law Office of Kirby A. Vernon, L.L.C., of Wichita, for appellants.

*Tom E. Hammond*, of Hammond, Zongker & Farris, L.L.C., of Wichita, for appellee.

Before RULON, C.J., GREENE, J., and KNUDSON, S.J.

KNUDSON, J.: The Boeing Company and the Insurance Company of the State of Pennsylvania appeal the decision of the Workers Compensation Board (Board) awarding Patrick J. Roskilly work disability benefits. Boeing argues Roskilly is not entitled to work disability benefits under our previous decision in *Watkins v. Food Barn Stores, Inc.*, 23 Kan. App. 2d 837, 936 P.2d 294 (1997). The following issues are presented: (1) Did the Board correctly interpret K.S.A. 44-510e(a); and (2) is Roskilly entitled to work disability benefits?

We affirm. Under the Board's findings, Roskilly demonstrated substantial task loss and his return to the same work position without accommodation does not preclude an award for work disability benefits.

The underlying facts are not in material dispute. Roskilly was employed at Boeing as an assembler for many years. Beginning in April 1996, Roskilly worked under lifting restrictions because of an unstable back. He was limited to a maximum lift with both arms of 50 pounds and frequent lifts of 35 pounds. On October 25, 2001, Roskilly injured his lower back while lifting a part weighing 50 to 75 pounds. While undergoing medical evaluation and treatment, Roskilly apparently continued to work as an assembler without any additional restrictions that exceeded those previously set in 1996. On December 14, 2001, while still receiving medical care for his injury, Roskilly was laid off due to a general reduction of Boeing's labor force. Significantly, a determination of Roskilly's work disability was not made until much later. Ultimately, the Board found Roskilly was entitled to a work disability award based on 59.5 percent permanent partial disability to the body as a whole.

There is no dispute by the parties that the Board's findings of task loss and wage loss are based on substantial competent evidence in the record. The Board correctly imputed a post-injury wage in determining work disability benefits. Boeing has filed a timely appeal contending that as a matter of law Roskilly is not entitled to benefits based on work disability following his layoff from an unaccommodated position. Boeing argues under K.S.A. 44-510e(a) and our decision in *Watkins* that permanent partial disability benefits should be based on Roskilly's functional disability only.

K.S.A. 2004 Supp. 44-556(a) specifically subjects workers compensation appeals to the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* This court has jurisdiction to review the Board's interpretation of law and findings of fact. K.S.A. 77-621(c)(4) and (7). While we give deference to the Board's interpretation of the law, if the Board's interpretation is erroneous, we may take corrective action. *Neal v. Hy-Vee, Inc.*, 277 Kan. 1, 11, 81 P.3d 425 (2003). Conversely, we are more restricted in our review of findings of fact. The Board's findings will be upheld if supported by substantial evidence even though evidence in the record would have supported contrary findings. *Webber v. Automotive Controls Corp.*, 272 Kan. 700, 705, 35 P.3d 788 (2001).

*Watkins* was decided under K.S.A. 1992 Supp. 44-510e(a), which provided the following formula for determining work disability:

"The extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the ability of the employee to perform work in the open labor market and to earn comparable wages has been reduced, taking into consideration the employee's education, training, experience and capacity for rehabilitation, except that in any event the extent of permanent partial disability shall not be less than percentage of functional impairment. . . . There shall be a presumption that the employee has no work disability if the employee engages in any work for wages comparable to the average gross weekly wage that the employee was earning at the time of the injury."

In *Watkins*, the claimant returned to work post-injury and performed the same work for the same wage. In reversing the Board's award based upon work disability, the court held that "[w]here a previously injured employee returns to work in an unaccommodated job and earns wages comparable to those earned before his or her injury, the presumption of no work disability applies *and will not be rebutted absent evidence of a change in the employee's physical condition.*" (Emphasis added.) 23 Kan. App. 2d 837, Syl.

The court further explained its rationale, stating:

"[I]t is uncontroverted that Watkins' physical condition has not changed since his injury. It follows that physically, Watkins' ability to perform work in the open labor market and earn comparable wages has not changed. The only change comes in the form of Watkins' decreased earnings since his layoff from Food Barn. However, work disability focuses on the reduction in a claimant's *ability* to earn wages, not on the actual wages lost. [Citation omitted.] Here, Watkins' abilities have remained constant." 23 Kan. App. 2d at 840.

The *Watkins* decision is clearly not controlling under the undisputed facts of this appeal. Although Roskilly returned to his regular employment without accommodation by Boeing, the Board's findings are conclusive that a presumption of no work disability was successfully rebutted. The Board accepted Dr. Murati's opinion that his physical restrictions precluded Roskilly from performing all of his regular duties. The Board summarized Dr. Murati's restrictions as follows:

"He restricted claimant to bending rarely and prohibited crawling. He limited the claimant to occasional sitting, climbing stairs, climbing ladders, squatting and driv-

ing, with frequent standing and walking allowed. He limited claimant's occasional lifting to a maximum of 35 pounds and frequent lifting up to 20 pounds."

The Board also accepted Dr. Murati's and Dr. Brown's separate opinions that Roskilly had a 10 percent impairment to the body as a whole and Murati's opinion that Roskilly suffered a 62 percent loss of tasks.

The Board correctly observed:

"It is the function of the trier of fact to decide which testimony is more accurate and/or credible and to adjust the medical testimony along with the testimony of the claimant and any other testimony which may be relevant to the question of disability. The trier of fact is not bound by medical evidence presented in the case and has the responsibility of making its own determination."

It is apparent the Board recognized the unique circumstances of this case. Roskilly returned to regular employment for a very limited period of time before the layoff; his medical treatment continued with definitive evaluations only after termination; those medical evaluations assessed changes in Roskilly's physical condition as a direct result of the injury sustained on October 25, 2001; and the evaluations found most credible by the Board support its determination of work disability.

We turn next to discussion of the Board's interpretation of existing K.S.A. 44-510e(a), amended by the legislature in 1993. The statute states, in material part:

"The extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the employee, in the opinion of the physician, has lost the ability to perform the work tasks that the employee performed in any substantial gainful employment during the fifteen-year period preceding the accident, averaged together with the difference between the average weekly wage the worker was earning at the time of the injury and the average weekly wage the worker is earning after the injury. In any event, the extent of permanent partial general disability shall not be less than the percentage of functional impairment. . . . An employee shall not be entitled to receive permanent partial general disability compensation in excess of the percentage of functional impairment *as long as* the employee is engaging in any work for wages equal to 90% or more of the average gross weekly wage that the employee was earning at the time of the injury." (Emphasis added.) K.S.A. 44-510e(a).

In interpreting K.S.A. 44-510e(a) and contrasting it with the prior law and *Watkins*, the Board stated:

"It is no longer an ability test, at least not in the sense of being applicable to the prospective job market, that is from the date of accident forward. Putting aside for the moment the question of good faith, to the extent ability is still a factor under the current statute, it is retrospective, instead of prospective. That is because the extent to which the injured worker's ability to work has been impacted is measured by the loss of actual job tasks the worker performed in any substantial gainful employment during the fifteen-year period preceding the accident. The loss is no longer measured by the total open labor market that exists after the accident. The rationale for this change was to get away from hypothetical jobs which the worker may or may not have had the education, training or experience to perform, and to, instead, utilize jobs the worker actually performed. The effect of this change is to render meaningless the distinction between accommodated and unaccommodated jobs, except to the extent that the concepts impact the task loss analysis. Accordingly, it is only in the situation where the injured worker had worked exclusively in the same job for the entire fifteen years preceding the accident that the successful return to that same unaccommodated job would establish a prima facie case for no work disability.

"In short, *Watkins* involved a different definition of work disability. The former version of K.S.A. 44-510e involved an ability test both as to jobs and wages, and *Watkins* is premised on that ability test. This distinction has been recognized by the Court of Appeals.

"Currently, ability or capacity to earn wages only becomes a factor when a finding is made that a good faith effort to find appropriate employment has not been made. *Copeland v. Johnson Group, Inc.*, 26 Kan. App. 2d 803, 804, 995 P.2d 369 (1999), *rev. denied* 269 Kan. 931 (2000). Once a finding has been made that the claimant has established a good faith effort, the difference in pre-and post-injury wages can be based on the actual wages made. *Copeland*, 26 Kan. App. 2d at 804."

The Board concluded K.S.A. 44-510e(a) does not preclude an award of work disability after a claimant's loss of employment, even though due to reasons other than his or her injury.

We agree with the Board's interpretation of K.S.A. 44-510e(a). "The new two-part test for finding and measuring work disability includes both a measurement of the loss of ability to *perform work tasks* and *actual loss of wages* resulting from the worker's disability." *Gadberry v. R.L. Polk & Co.*, 25 Kan. App. 2d 800, 802-03, 975 P.2d 807 (1998). In *Gadberry*, the court held: "An employee who returns to work at the employee's pre-injury wage and then within a few weeks of the date of return receives a termination notice due to economic layoff is not precluded from a finding of

wage loss for workers compensation benefits." 25 Kan. App. 2d 800, Syl. ¶ 4.

In addition, the 1993 legislative amendment to K.S.A. 44-510e(a) removed from the statute the language "[t]here shall be a presumption that the employee has no work disability *if*" the employee engages in any work for wages comparable to the average gross weekly wage that the employee was earning at the time of the injury, and replaced the same with the language "[a]n employee shall not be entitled to receive permanent partial general disability compensation in excess of the percentage of functional impairment *as long as* the employee is engaging in any work for wages equal to 90% or more of the average gross weekly wage that the employee was earning at the time of the injury." (Emphasis added.) L. 1993, ch. 286, sec. 34. The language of the statute as amended is plain and unambiguous, leaving no room for judicial construction. See *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003). We hold that on its face K.S.A. 44-510e(a) no longer may be read to make a distinction between accommodated employment and unaccommodated employment when determining an injured worker's right to recover work disability benefits.

For all of the foregoing reasons, we affirm the decision of the Board.

Affirmed.