(154 P.3d 532)

No. 95,566

DONALD R. EDWARDS, *Appellee/Cross-appellant*, v. THE BOEING COMPANY and INSURANCE CO. OF THE STATE OF PA., c/o AIG, *Appellants/Cross-appellees*.

Opinion filed March 30, 2007.

*Eric K. Kuhn* and *Stephen M. Kerwick,* of Foulston Siefkin LLP, of Wichita, for appellants/cross-appellees.

*Stephen J. Jones*, of Law Office of Stephen Jones, of Wichita, for appellee/cross-appellant.

Before MARQUARDT, P.J., PIERRON, J., and KNUDSON, S.J.

KNUDSON, J.: The Boeing Company and Insurance Company of the State of Pennsylvania, c/o American International Group (Boeing) appeal the Worker Compensation Board's (Board) final order after a review and modification proceeding pursuant to K.S.A. 44-528. The claimant, Donald R. Edwards, has cross-appealed.

In the review proceeding, the Board considered two distinct awards that had previously been entered in favor of Edwards and found that as the result of his layoff from Boeing he had sustained a 100 percent wage loss under each award. The Board found that Boeing was entitled to a credit pursuant to K.S.A. 44-510a to preclude duplicative compensation benefits resulting from his work disability awarded in the later injury.

Boeing contends the Board erred in pyramiding Edwards' work disability based on his loss of employment. Edwards contends the Board erred in granting a credit under K.S.A. 44-510a. We affirm in part and reverse in part. We conclude Edwards is not entitled to work disability benefits resulting from his second injury and subsequent layoff from Boeing. Under the evidence presented, all of Edwards' work disability is attributable to the first injury.

The controlling facts of this case are uncontroverted. Edwards sustained a compensable injury to his back on March 10, 1998. Edwards was employed with Boeing at the tooling department at the time of his injury. He eventually had surgery on his lower back and returned to work in an alternative work program for 8 months. Edwards then returned to the tooling department. After his return to the tooling department, Edwards was accommodated by being allowed to pick jobs that were less strenuous with less lifting and permitting Edwards to get help from his coworkers. Edwards was awarded 15% general body disability for the lower back injury, subject to review and modification.

On April 18, 2001, Edwards sustained an injury to his neck during the course of his employment in the tooling department. Initially, Edwards did not take leave from work but continued to work in his accommodated position in the tooling department. He even-

tually had surgery on his neck on January 29, 2003. Edwards was off work for 8 months following the neck surgery. Dr. Mills put restrictions on overhead lifting and hyperextension of the arms when Edwards was released to work. However, Edwards testified that Boeing would not allow him back with those restrictions, so he asked Dr. Mills to lift the restrictions. There were documents in the record corroborating Edwards' assertion that he requested the doctor to lift the neck restrictions. A form from Boeing shows that on September 15, 2003, a modified placement could not be located for his current restrictions of no repetitive or prolonged neck hyperextension, no overhead work, and a maximum of 4 hours per shift. A form from Dr. Mills dated September 15, 2003, stated: "[P]er pt's request, the restrictions [to] avoid repetitive or prolonged neck hyperextension and no overhead work are lifted." The form released Edwards to work for full duty without restrictions on September 16, 2003. On November 6, 2003, Dr. Mills released Edwards to work for full duty without any neck restrictions. As a consequence, no additional accommodation by Boeing was requested or deemed necessary by Edwards.

When Edwards returned to work on September 16, 2003, there had been layoffs in the tooling department, so Boeing moved Edwards to the modification department.

On December 19, 2003, Edwards was awarded 20% impairment to the body as a whole in a settlement hearing for the neck injury, subject to review and modification.

After the second injury, Edwards worked in the modification department for about 7 months until he was given a medical layoff, effective April 30, 2004. Boeing informed Edwards that it did not have any other jobs that would accommodate his medical restrictions that had resulted from the low back injury.

Edwards then requested review and modification of his award for both claims. In her decision, Administrative Law Judge (ALJ) Nelsonna Potts Barnes set out the evidence presented, contentions of the parties, and her findings, stating:

"Claimant contends that he is entitled to a work disability post award, effective June 14, 2004, as he was given a medical layoff from Respondent at that time. Respondent concedes that Claimant is entitled to a work disability award. The

Court must determine whether the Claimant's work disability is attributable to his low back injury of March 10, 1998 or neck injury of April 18, 2001.

"Claimant contends that the work disability should be assigned to Docket No. 1,006,143 which is his neck injury. Claimant was off work approximately eight months due to surgery. He returned to work and was placed in a new job classification where he worked without problem and was able to perform his job duties. Nonetheless, he was laid off effective June 14, 2002.

"Respondent argues that Claimant was given a medical layoff, based on permanent restrictions given for his back injury of March 10, 1998 (Docket No. 258,707). Thus, Respondent requests that the Court find Claimant is entitled to a work disability as a part of that claim. In support of their argument, Respondent demonstrates that Claimant had no permanent restrictions pertaining to his neck at the time of his layoff. In addition, Respondent's witnesses testified that the restrictions which led to Claimant's layoff pertained to his back condition and his low back injury. The Administrative Law Judge finds that the evidence is clear and convincing that Claimant was given a medical layoff due to permanent medical restrictions pertaining to his back claim of March 10, 1998, Docket No. (258,706). Accordingly, his work disability shall be placed on that claim.

"Work disability has two components. The first component is determined by the percentage to which the employee, in the opinion of the physician, has lost the ability to perform the work tasks that the employee performed in any substantial and gainful employment during the fifteen year period preceding the accident. In this case, neither party presented evidence from a physician regarding Claimant's percentage of tasks loss.

"The last component of the work disability equation is the calculation of wage loss. The Court finds Claimant has made a good faith effort to locate employment and his actual wage loss of 100 percent should be used in calculating the Award. Averaging the zero percent task loss with the 100 percent wage loss equals a work disability of 50 percent."

Edwards appealed to the Board from the ALJ's award. The Board, although agreeing with the ALJ's decision regarding work disability arising from the back injury, proceeded to also determine there was work disability as a result of the neck injury. There is scant explanation for the Board's decision from the record on appeal. In its order, the Board states:

"Claimant points out that he worked for respondent for over three years after his low back surgery with no further injury to his back. He claims he was laid off only after he complained of an injury to his shoulders and respondent discovered the restrictions in his records. Claimant also argues that the reason for his layoff is irrelevant to the determination of work disability, and since the layoff he has had a 100 percent wage loss in each case.

"The Board agrees with the ALJ's findings and conclusions, except the Board finds that both of claimant's injuries contributed to his wage loss and his reduced capacity to work. Accordingly, claimant has suffered a 100 percent wage loss in both docketed claims."

The principal isue on appeal is whether the Board erred by finding 100 percent wage loss in both modification proceedings following the claimant's layoff. Boeing asserts that this issue requires interpretation of K.S.A. 44-510e(a) and our standard of review is de novo. The claimant agrees. We would also note that whether the Board's findings are supported by substantial competent evidence is a question of law affording de novo review. *Titterington v. Brooke Insurance*, 277 Kan. 888, 894, 89 P.3d 643 (2004).

We understand Boeing's contention to be that as a matter of law a claimant cannot be entitled to a 100 percent wage loss in more than one compensation proceeding as the result of a single layoff. We do not believe that precise question must be addressed in this appeal because the underlying evidence and uncontroverted facts do not support the Board's decision.

K.S.A. 44-510e(a) provides for permanent partial disability benefits and reads:

"Permanent partial general disability exists when the employee is disabled in a manner which is partial in character and permanent in quality and which is not covered by the schedule in K.S.A. 44-510d and amendments thereto. The extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the employee, in the opinion of the physician, has lost the ability to perform the work tasks that the employee performed in any substantial gainful employment during the fifteen-year period preceding the accident, averaged together with the difference between the average weekly wage the worker was earning at the time of the injury and the average weekly wage the worker is earning after the injury. In any event, the extent of permanent partial general disability shall not be less than the percentage of functional impairment. Functional impairment means the extent, expressed as a percentage, of the loss of a portion of the total physiological capabilities of the human body as established by competent medical evidence and based on the fourth edition of the American Medical Association Guides to the Evaluation of Permanent Impairment, if the impairment is contained therein. An employee shall not be entitled to receive permanent partial general disability compensation in excess of the percentage of functional impairment as long as the employee is engaging in any work for wages equal to 90% or more of the average gross weekly wage that the employee was earning at the time of the injury."

K.S.A. 44-528(a) provides that an award may be reviewed and modified for certain reasons, including "the functional impairment or work disability of the employee has increased or diminished." See *Niesz v. Bill's Dollar Stores*, 26 Kan. App 2d 737, 741, 993 P.2d 1246 (1999) ("The presumption of no work disability is subject to reevaluation if a worker *in an accommodated position subsequently becomes unemployed.*"[Emphasis added.]) When the ALJ modifies an award, the modification is "subject to the limitations provided in the workers compensation act." K.S.A. 44-528(a).

The following case law is also helpful in resolving the issues presented on appeal. "The two-part test for measuring work disability includes both a measurement of the loss of ability to *perform work tasks* and *actual loss of wages* resulting from the worker's disability." (Emphasis added.) *Gadberry v. R.L. Polk & Co.*, 25 Kan. App. 2d 800, 802-03, 975 P.2d 807 (1998). In *Gadberry*, the worker returned to work after sustaining a back injury and having surgery. About 1 month later, the worker was terminated because her department was relocated. Even though there was no evidence that the worker was in an accommodated position when she returned to work, the ALJ and the Board found that the timing of the worker's termination was suspect and the worker's duties continued to be performed by other employees at the same facility. The court held that a worker who returns to work for his or her preinjury wage is not precluded from a finding of wage loss when he or she was given notice of termination for an economic layoff a few weeks after the date of return. 25 Kan. App. 2d at 804-05.

In *Tallman v. Case Corp.*, 31 Kan. App. 2d 1044, 77 P.3d 494 (2003), the worker suffered a back injury. After surgery, the worker was released to light duty and was eventually released to full duty without restrictions. The worker reported that he assumed his regular work duties 2 weeks before his physician released him. The worker's workload decreased due to a company-wide decrease in work load, but the worker testified that his back continued to hurt even with the reduced workload. The worker was laid off due to an economic downturn. This court upheld the Board's finding that the worker returned to a situation identical to an accommodated position because he did not work at full capacity when he returned.

31 Kan. App. 2d at 1048. Our court rejected the employer's argument since the layoff was purely economic and not related to disability, work disability was not available. The opinion noted that the issue was the worker's capacity to do his or her job and not the amount of wages being earned at the time. The worker was entitled to an award once the employer laid him off because the worker's work disability came to fruition upon termination. 31 Kan. App. 2d at 1052.

In *Roskilly v. Boeing Co.*, 34 Kan. App. 2d 196, 116 P.3d 38 (2005), the worker was under lifting restrictions due to an unstable back. The worker injured his back but continued to work within the earlier lifting restrictions while undergoing medical evaluation and treatment. While the worker was still receiving medical care for his injury, he was laid off due to a reduction in force. The opinion noted that the Board found the worker successfully rebutted a presumption of no work disability. The opinion also reviewed earlier case law applying the former version of 44-510e(a) in *Watkins v. Food Barn Stores, Inc.*, 23 Kan. App. 2d 837, 936 P.2d 294 (1997), and the more recent interpretation of the work disability statute since its 1993 amendment. The panel agreed with the Board's determination that a claimant may be eligible for a work disability award even when the loss of employment is not due to injury. "An injured worker who demonstrates substantial task loss as a result of a work-related injury may recover work disability benefits after returning to his or her unaccommodated employment but thereafter being terminated for a reason not related to his or her underlying injury or the resulting disability." *Roskilly,* 34 Kan. App. 2d 196, Syl.

In the present case, it is uncontroverted Edwards returned to accommodated work after his lower back injury in claim Docket No. 258,706. After his second injury, the neck injury in claim Docket No. 1,000,143, Edwards returned to work in a position that continued accommodation for his permanent restrictions related to his lower back injury, but there were no accommodations as a result of his neck injury.

Because Edwards was terminated from a position where he was accommodated for his lower back injuries, we agree with the Board

that he was entitled to a work disability award for the lower back claim.

However, we cannot agree with the Board that the Workers Compensation Act allows an unsubstantiated finding of work disability arising under the neck claim when there was no accommodation as a result of that injury and there was no proof of task loss. Furthermore, there are no findings by the ALJ or the Board that the timing of the medical layoff, 7 months after returning from neck surgery, was suspect as in *Gadberry*.

In summary, Edwards was not eligible for a work disability award in the review and modification proceeding because there was no substantial competent evidence his functional impairment or work disability increased as a result of the layoff. See K.S.A. 44-528(a). All of claimant's increased work disability is attributable to the back injury for which he was afforded accommodated duties by Boeing. Our decision renders moot the issue raised on cross-appeal.

Affirmed in part, reversed in part, and remanded with directions to modify the Board's order consistent with this opinion.