(174 P.3d 452)

No. 97,254

Leroy M. Stephen, *Appellee*, v. Phillips County, and Kansas Workers Risk Cooperatives for Counties, *Appellants*.

Opinion filed January 18, 2008.

*Mickey W. Mosier*, of Clark, Mize & Linville, Chartered, of Salina, for appellants.

*Jeffrey E. King*, of Hampton & Royce, of Salina, for appellee.

Before Caplinger, P.J., Elliott and Leben, JJ.

Leben, J.: Less than 6 months before the 2004 election, Phillips County Sheriff Leroy Stephen was injured while trying to handcuff an unruly prisoner. After the injury, he was off work for nearly 2 months. When he returned to work, his doctors directed that he lift no more than 10 pounds and avoid stooping, bending, or twisting. While operating under those restrictions, he lost the primary

election in August. In October 2004, the work restriction was expanded to allow him to lift up to 30 pounds. While operating under the revised work restrictions, he lost a write-in campaign in the November general election.

No one can say whether Stephen lost his job because of the injury—voters are not required to explain their votes. But Sheriff Stephen was an employee covered by the Kansas Workers Compensation Act, and he sought and obtained a permanent partial disability award that included an amount partially compensating him for his wage loss *after* he lost his job. Phillips County argues that because there is no proof that Stephen lost his job as a result of his injury, he should not be allowed to recover any amount compensating for wage loss after his term as sheriff ended. In prior cases, most recently *Roskilly v. Boeing Co.*, 34 Kan. App. 2d 196, 116 P.3d 38 (2005), we have affirmed the award of such benefits to an employee whose layoff was for economic reasons unrelated to the employee's injury. We find no reason to apply a different rule to an employee who lost his job due to an election defeat, and we affirm the Workers Compensation Board's award of benefits to Stephen.

## A: *Putting Our Issue in the Context of Workers Compensation Law.*

As we have noted and will discuss in more detail soon, prior cases share some similarities to this one. The main task before us in this case is to determine whether these prior cases control the result here.

First-year law students learn that the law develops in large part by analogy. A court decides that a case involving facts A and B comes out a certain way. When the next case involves facts A, B, and C, the court must decide whether the same result still applies or whether fact C has fundamentally altered the landscape so that a different result is called for. Although this form of caselaw development arose under the common law—where there is no benefit of statutory guidance—it also applies in statutory interpretation, albeit with an emphasis on the statutory language as the preeminent guidepost. So if a statute has been applied a certain way when facts A and B are present, the court ordinarily will apply

it that same way when facts A, B, and C are present unless fact C calls for a different application under the statutory language.

To determine whether the *Roskilly* rule applies here, we must first review some of the basics of workers compensation benefits. Some injuries are listed on a schedule that determines the benefit paid—ranging from the loss of the use of a shoulder, which calls for 225 weeks of benefit payments, to the loss of use of the little finger, which calls for 15 weeks of benefit payments. When a Kansas worker has a lasting injury not listed on the schedule that causes partial disability, the Workers Compensation Act provides an award for "permanent partial general disability." That award may be calculated in two ways: (1) based on a statutorily defined work disability or (2) based on overall functional impairment calculated according to the American Medical Association Guides to the Evaluation of Permanent Impairment. The employee receives the greater of these two awards unless he or she is working and earns at least 90% of the pre-injury wage; in that case, the employee receives only the functional-impairment award for "as long as" he or she is earning at least 90% of the pre-injury wage. K.S.A. 44-510e(a).

The work-disability calculation is itself based on two factors: (1) medical evidence of the employee's percentage loss of ability to perform work-related tasks and (2) the employee's actual wage loss (calculated as the percentage of pre-loss wages that the employee is now unable to earn). The calculated percentages for diminished ability to perform tasks and wage loss are averaged. They are then used to calculate the permanent partial general disability award in this method:

[(employee's average gross weekly wage x 66.67%) OR (statutory maximum wage amount)] x (work-disability percentage) x (no. weeks of benefit left to be paid) = permanent partial general disability award.

See K.S.A. 44-510e(a); *Graham v. Dokter Trucking Group*, 284 Kan. 547, 556, 161 P.3d 695 (2007).

A review of that formula reveals that a substantial part of the award is designed partially to compensate for future wage loss. The number of remaining weeks of benefits to be paid in the formula

is 415 weeks minus the number of weeks over 15 that temporary benefits were paid. Thus, if a worker received temporary benefits for 30 weeks, 400 weeks would be inserted into the formula. The worker receives the benefit calculated under the work-disability formula only if it exceeds the benefit calculated under the functional-impairment formula, which has already factored in the compensation deemed appropriate under this statute for the injury itself. So the work-disability formula provides partial compensation for future wage loss. Given that context, Phillips County argues here that Stephen should not be able to recover this work-disability award, which compensates him for wage losses after he lost reelection, because there is no proof that he lost the election because of his injury.

One additional wrinkle in Kansas workers compensation law must be discussed, though because of a stipulation it makes only a cameo appearance in our case. This court has held that it is implicit in the Workers Compensation Act that an employee who loses the job at which the injury took place must make a good-faith effort to find work. Absent good faith, then an appropriate post-injury wage based on what the claimant should have been able to earn is imputed to determine the wage loss. See *Castro v. IBP, Inc.*, 29 Kan. App. 2d 475, 478, 30 P.3d 1033 (2001); *Copeland v. Johnson Group, Inc.*, 24 Kan. App. 2d 306, 320, 944 P.2d 179 (1997). The parties in our case stipulated to the wage that would be imputed if the fact-finder determined Stephen did not seek new employment in good faith. Neither party has argued here that the cases imposing this good-faith requirement—which is not found in the statutory language—should be overruled.

*B: The Employee Who Loses His Job in a Layoff Still Receives Workers Compensation Benefits Attributable to Future Wage Losses.*

This court has previously considered two cases involving employees laid off at the Boeing Company in Wichita. In both cases, we affirmed the award of work-disability benefits after the employee was laid off for economic reasons unrelated to the em-

ployee's injury. *Roskilly*, 34 Kan. App. 2d 196; *Lee v. Boeing Co.*, 21 Kan. App. 2d 365, 899 P.2d 516 (1995).

In *Roskilly*, after considering the statutory language and the view of the Workers Compensation Board, this court agreed with the Board's determination that a work-disability award is not precluded under the statute even though the "claimant's loss of employment . . . [was] due to reasons other than his or her injury." 34 Kan. App. 2d at 200. The claimant in *Roskilly* was laid off due to a general reduction in workforce while he was still receiving treatment but before he had received his final disability rating. The claimant in *Lee* was laid off for economic reasons after he had returned to work in a less strenuous job than the one at which he was injured. The facts in *Lee* arose before K.S.A. 40-510e(a) was amended in 1993, but *Roskilly* arose under the current statute.

There are also some cases in which this court has upheld the denial of work-disability benefits when a claimant had been fired for cause. *E.g., Newman v. Kansas Enterprises*, 31 Kan. App. 2d 929, 77 P.3d 492 (2002). But Phillips County does not argue here for the application of those cases, presumably because it would have the burden to show that Stephen was terminated for cause—and, as we have already noted, voters are not required to give reasons for choosing one candidate over another, even an incumbent with 25 years of service.

*C: The Employee Who Loses His Job by Losing an Election Is Entitled to the Same Workers Compensation Benefits as One Who Is Laid Off.*

The claimant in our case was an elected sheriff, not a factory worker. And he lost his job not because of an economic downturn but because the voters refused to give him another term in office. We must determine whether these differences have so fundamentally altered the landscape that they call for a different result when applying the statute on these facts.

One might argue that an elected sheriff has no right to continue in that position at the end of the term of office. Though that's true, it does not distinguish the situation from that of an at-will employee, who does not even have a right to continued employment.

Thus, when applying *Roskilly*'s rule that a work-disability award is not precluded when the loss of job is caused by something other than injury, we see no basis to distinguish the loss of a job due to an election defeat from the loss of a job due to an economic downturn. In either case, the employee has lost the job. And from the employee's vantage point, the key concern at that point is whether—with *any* disability resulting from the injury—he or she can find new employment at a comparable wage. The injury may well be related to the *ongoing* inability to obtain new work at a comparable wage, even though the injury did not cause the job loss itself.

There is certainly evidence in this case to support the view that Stephen's injury left him unable to obtain new work at a comparable wage. Although there was an issue over whether Stephen had exercised good faith to look for a new job, Phillips County stipulated that *even if he had exercised good faith to look for a new job,* he still would have suffered a 63.5% wage loss. The Workers Compensation Board found that Stephen had not exercised good faith; they noted that he had only submitted one application for a deputy-sheriff position. Based on Phillips County's stipulation, they imputed the 63.5% loss of wage-earning capacity. That was averaged together with a 46% loss of the ability to perform work-related tasks for an overall work-disability percentage of 54.75%. That percentage was the basis for Stephens' work-disability award.

Because Phillips County stipulated to the extent of the wage loss, we have no findings that document the specific difficulties Stephen had in obtaining new employment. But it is not hard to imagine that an inability to lift more than 30 pounds, bend, stoop, or twist would significantly limit the ability of a law-enforcement officer to find similar work.

Several other considerations support applying the same rule as applied in *Lee* and *Roskilly* here. First, as in all statutory-interpretation cases, we start with the statutory language itself. Phillips County concedes that there is no language in K.S.A. 44-510e(a) requiring a causal connection between the injury and the loss of employment. Indeed, the statutory language tells us to calculate the work-disability percentage by averaging two percentages:

- First, "the extent . . . to which the employee, in the opinion of the physician, has lost the ability to perform the work tasks that the employee performed in any substantial gainful employment during the fifteen-year period preceding the accident," and
- Second, "the difference between the average weekly wage the worker was earning at the time of the injury and the average weekly wage the worker is earning after the injury."

The statute is quite straightforward in its direction to compare the pre-injury and post-injury wages, and no mention is made of any requirement that the reduced wage must have been directly caused by the injury.

Second, the Workers Compensation Board has interpreted the current statute as not containing such a causation requirement, both in our case and in *Roskilly*. Although the Board's interpretation of the statute is not binding on us, it is entitled to some deference when there is a rational basis for it. *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, Syl. ¶ 5, 154 P.3d 494 (2007). The Board's interpretation is entitled to deference here: the statutory language doesn't suggest that a causal connection is required so it is certainly rational to interpret it so.

Third, in determining whether to extend the holdings of *Lee* and *Roskilly* to new factual situations, it is appropriate to consider whether those precedents are in line with caselaw in other jurisdictions. They are: other state courts have also held that a disability award may be made even after the claimant's employment has been terminated for reasons not related to the injury. See *Johnston v. Super Food Services*, 461 So. 2d 169, 170 (Fla. Dist. App. 1984) (holding that an employee is entitled to benefits even if wage loss is attributable to economic conditions, seasonal layoff, or for-cause discharge); *Bradley's Case*, 56 Mass. App. Ct. 359, 360-61, 778 N.E.2d 11 (2002) (holding that an employee is entitled to benefits for loss of earning capacity even though the job had become unavailable due to an employer's lockout); *B.E. & K. Const. v. Abbott*, 59 P.3d 38, 42-45 (Okla. 2002) (holding that an employee is entitled to benefits even when that employee volunteers for an employer-

instigated reduction in force where the ultimate termination decision lies with the employer).

Fourth, we note that an ordinary person injured by negligence outside the workplace would not be precluded from recovering a wage loss in a similar circumstance. See *Amberson v. Woodul*, 108 S.W.2d 852, 855 (Tex. Civ. App. 1937); 22 Am. Jur. 2d, Damages §§ 149-50, 158. Meanwhile, an injured worker's only remedy, even if injured through negligence of the employer, is the one provided under the Workers Compensation Act. K.S.A. 44-501(b). That remedy is explicitly limited by statute in ways not applicable to tort victims—the statute limits the amount that can be recovered and the time period over which benefits, the equivalent of tort damages, may be collected. We see no reason to further limit the employee's remedy based upon concepts not found in the statute and not applied to an ordinary tort victim.

Phillips County attempts to insulate its position from these arguments by relying on our decision in *Graham v. Dokter Trucking Group*, 36 Kan. App. 2d 521, 141 P.3d 1192 (2006). In *Graham*, this court had held that the work-disability test included both the inability to perform work tasks and the loss of wages "resulting from the worker's disability." 36 Kan. App. 2d at 526. This court also held that a wage loss was not compensable when it resulted from a worker's self-imposed restriction. 36 Kan. App. 2d at 526. But this court's ruling in *Graham* was reversed, and the Supreme Court emphasized that the statutory language references actual earnings, not ability to earn wages, for computing a work disability. 284 Kan. 547, 558, 161 P.3d 695 (2007). We note that both in *Graham* and in *Casco*, the Supreme Court has emphasized the need to focus primarily on the language used in the Workers Compensation Act itself. *Graham*, 284 Kan. at 556-59; *Casco*, 283 Kan. at 521-29. Wage loss for purposes of calculating work disability is defined by the plain language of K.S.A. 44-510e(a) as the difference between pre-injury and post-injury wages, and it is easily calculated. *Graham*, 284 Kan. 547, Syl. ¶ 6. There is no language in the statute that suggests that a claimant loses the ability to claim work disability either because he was laid off for economic reasons or because he lost a bid for reelection.

Phillips County also cites to *Hernandez v. Monfort, Inc.*, 30 Kan. App. 2d 309, 41 P.3d 886, *rev. denied* 274 Kan. 1112 (2002). In that case, a claimant did not receive a work-disability award based on the statutory prohibition for "as long as" the employee is earning at least 90% of the pre-injury wage. The Board concluded that Hernandez' reduced wages were because he was working less over-time, not due to injury. Phillips County points to the Board's find-ing, quoted in our decision, that there must be " 'some type of causal connection or nexus between the injury and the disability for which the benefits are being awarded.' " 30 Kan. App. 2d at 310. The Board noted that although the statutory language did not explicitly contain such a requirement, "the fundamental function and purpose of the Act requires that there be a nexus between the injury and the wage loss." 30 Kan. App. 2d at 310. This court con-cluded that there was substantial competent evidence to support the Board's conclusion that Hernandez' wage drop was due to the reduced overtime. This court also treated the Board's finding that Hernandez was not entitled to a work disability as a negative find-ing, which may be overturned only based on arbitrary disregard of uncontroverted evidence, or evidence of bias, passion, or prejudice.

*Hernandez* involved a company-wide decrease in overtime hours, not a loss of employment. *Hernandez* has previously been distinguished from a case involving the loss of employment. *Chow-ning v. Cannon Valley Woodwork, Inc.*, 32 Kan. App. 2d 982, 992, 93 P.3d 1210 (2004). In *Chowning*, this court concluded that *Lee*, not *Hernandez*, applied when the work-disability claim was not based on a loss of overtime hours. The Board in Stephen's case concluded that *Lee* was more analogous to the case now before us than *Hernandez*. We agree and decline to extend *Hernandez* to the loss-of-job situation for which *Lee* and *Roskilly* already provide guidance.

## Conclusion

The Workers Compensation Board's award of a work-disability benefit to Stephen is based squarely on the language of K.S.A. 44-510e(a) and our prior decisions in *Roskilly* and *Lee*. The decision of the Board is affirmed.